**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANGELA HYMAN,<br>                            Plaintiff,<br>            vs.<br><br>CAPITAL ONE AUTO FINANCE,<br>COMMONWEALTH RECOVERY GROUP,<br>INC.,<br>PENNSYLVANIA STATE POLICE, COL.<br>TYREE C. BLOCKER, MICHAEL MORRIS,<br>BRYAN DEVLIN and JOHN DOE TROOPERS<br>1-10,                            Defendants. | CIVIL ACTION<br><br><br><br>NO. 3:17-cv-00089(KRG) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE**
**COMMONWEALTH DEFENDANTS' MOTION TO DISMISS**

One of the most basic tenets of constitutional law is the right to procedural due process of law. "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbot v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). This means that the government cannot arbitrarily take your property—including your car—without first providing a meaningful measure of process to ensure the deprivation is warranted. Without this liberty, government officials—including law enforcement—could assume the role of judges on the street, and in their "curbside courtrooms," they could arbitrarily decide to confiscate our property without prior notice or a meaningful opportunity to be heard.

Unfortunately, this abuse of power is a reoccurring event in the context of private repossessions of collateral, even though controlling case law plainly prohibits law enforcement from affirmatively aiding lenders and their repo men. *See id.* at 149. Despite this controlling law, the Pennsylvania State Police systematically provides affirmative aid to repossessors as a matter of practice, in violation of the Fourth and Fourteenth Amendments. Am. Compl. ¶ 109.

1

This case is just one example of the Pennsylvania State Police's well-established practice of unreasonably depriving property rights without due process of law.  Trooper Bryan Devlin not only ordered the repossession to go forward, but threatened to break open the vehicle, forcibly remove the occupant, and arrest that individual for disorderly conduct.  When Trooper Devlin was warned that his conduct was unlawful, he responded with the same indifference the Commissioner gives to his force's unlawful practice: "That's okay." Am. Compl. ¶ 50.  Because their conduct is far from "okay" under our Constitution, this Court should deny the Commonwealth's Motion to dismiss.

## I.    FACTS

Plaintiff Angela Hyman is a fifty-seven year old woman in poor health.  Am. Compl. ¶ 18. She and her partner Shyree live in Ms. Hyman's house in Nanty Glo, PA.  *Id.*  In March 2014, Ms. Hyman purchased a new 2014 Toyota Corolla from a car dealership in Chesapeake, VA.  *Id.* ¶ 19. Defendant Capital One financed the purchase of Ms. Hyman's vehicle and was the secured party. *Id.* ¶ 20.

In early September 2016, Ms. Hyman was hospitalized due to illness. *Id.* ¶ 21.  Because of her illness, Ms. Hyman asked Capital One for a deferment on her auto payments.  *Id.* For unexplained reasons, Capital One did not advise Ms. Hyman whether it would approve her request. *Id.* ¶ 22.  Instead of granting Ms. Hyman's reasonable request for a deferment while she was recovering from her illness or giving her notice that the bank would not allow it, Capital One ordered Defendant Commonwealth Recovery Group to repossess Ms. Hyman's Toyota.  *Id.* ¶ 23. Then, in the evening hours of October 5, 2016, Capital One's repo man trespassed onto Ms. Hyman's property—even though she repeatedly demanded him off her property—and he repossessed her Toyota without court order.  *Id.* ¶¶ 24, 29–30, 32, 60.

2

But the repo man did not act alone.  Before the illegal repossession was completed, Shyree entered the Toyota and refused to leave, which left the repo man without legal recourse because he could not tow away the occupied Toyota without further breaching the peace.  *Id.* ¶¶ 31, 33, 37, 39.  When his attempts at forcibly taking the Toyota failed, the repo man solicited the assistance of the Pennsylvania State Police.  *Id.* ¶¶ 39–40.  Despite the private nature of the dispute, a host of State troopers arrived within minutes, including Michael Morris, Bryan Devlin, and others.  *Id.* ¶ 41.

Even though the repo man was actively trespassing on Ms. Hyman's property, the troopers materially assisted the trespassing repo man in his illegal repossession of the car.  *Id.* ¶¶ 39, 43. The troopers knew that Capital One, Commonwealth Recovery Group, and their repo man did not have a court order or other judicial authority to repossess the car.  *Id.* ¶ 44.  That is, there was no proceeding, hearing, or due process of law.  *Id.* ¶¶ 44–45.  Even so, Trooper Devlin had already made his ruling in his curbside courtroom—he decreed to all that the repo man had a right to take the vehicle, and helped the repo man do so.  *Id.* ¶ 46.

During the confrontation, Ms. Hyman called her daughter Makiba, a law student, for advice.  *Id.* ¶ 47.  Makiba spoke with Trooper Devlin and pled with him to stop because this was a purely civil, contractual matter and he was violating the law by facilitating the seizure.  *Id.* ¶¶ 48–50.  In response, Trooper Devlin ordered Shyree out of the Toyota.  *Id.* ¶ 50.  Trooper Devlin told Ms. Hyman and Makiba (over the phone): "Here's what going happen [sic], okay, if she doesn't get out we are going to break the window."  *Id.*

Trooper Devlin's illegal intimidation did not stop there.  He went so far as to threaten to arrest Shyree for disorderly conduct even though she sat was peacefully and lawfully in the car. *Id.* ¶¶ 50, 52.  "I'm going to tell you what's going to happen.  She is going to be removed, she

going to be arrest[ed] for disorderly conduct and the car is still going to get taken." *Id.* ¶ 50.  Makiba alerted Trooper Devlin he was breaking the law, to which he responded, unapologetically, "That's okay." *Id.*

After Makiba and Trooper Devlin concluded their phone call, Trooper Devlin aimed his threats directly at Shyree, warning her that they would shatter her window and forcibly haul her out of the vehicle: "You've got 30 seconds to come out or [we're] breaking the window and coming in . . . . If you refuse to come out we are going to have to remove you and I do not want to do that for a repossessed vehicle." *Id.*

Trooper Devlin stayed true to his threat, warning Shyree, "Your time is up. Yes or no?" *Id.* Left without options, Shyree exited the Toyota, and Trooper Devlin, again without any court order or other lawful authority, directed Ms. Hyman to surrender the Toyota to the repo man.  *Id.* ¶¶ 51–52.  The other troopers on the scene, including Trooper Morris, also assisted in the repo man's repossession of the Toyota. *Id.* ¶¶ 43, 55, 58.  The repo man would not have been able to repossess the Toyota but for the troopers' active assistance. *Id.* ¶ 106–07.

The conduct of Trooper Devlin and Trooper Morris was not an anomaly.  Rather, their conduct was consistent with the Pennsylvania State Police's well-established practice of assisting lenders and their repo men in private civil repossessions of vehicles without a court order. *Id.* ¶ 109.  Pennsylvania State Police troopers regularly provide assistance to repossession agencies and secured parties like Commonwealth Recovery Group and Capital One. *Id.* ¶ 71.   The Commissioner of the Pennsylvania State Police, Colonel Tyree C. Blocker, for all intents and purposes endorses this unconstitutional practice because he does not train his officers to refrain from assisting in these lawless repossessions despite being the top official who is responsible for providing such training to his police force. *Id.* ¶¶ 108–110.

Ms. Hyman sued Trooper Devlin, Trooper Morris, Col. Booker in their personal and official capacities under 42 U.S.C. § 1983 for their unconstitutional conduct.[1]  Specifically, Ms. Hyman alleges Trooper Devlin and Trooper Morris unreasonably seized her vehicle in violation of the Fourth Amendment and deprived Ms. Hyman of her property without due process in violation of the Fourteenth Amendment.

## II.   LEGAL ARGUMENT[2]

Commonwealth Defendants now move to dismiss.  Their arguments, however, belie the facts and controlling law.  For the following reasons, Defendants' motion should be denied.

### a.   Trooper Morris and Trooper Devlin, acting in their individual capacities, engaged in state action and violated Ms. Hyman's rights under the Fourth and Fourteenth Amendments.[3]

Trooper Morris and Trooper Devlin engaged in state action when they actively assisted the repo man in his illegal repossession, and in doing so they unreasonably deprived Ms. Hyman of her possessory interest in her vehicle without due process of law.

It is beyond dispute the Fourth Amendment prohibits unreasonable seizures of property, which occurs when "there is some meaningful interference with an individual's possessory interests in that property" that is objectively unreasonable. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  The Supreme Court's decision in *Soldal* "confirms that state actors violate the Fourth Amendment by taking an active

---

[1] Ms. Hyman also sued ten John Doe Troopers in their personal and official capacities, along with the Pennsylvania State Police, Commonwealth Recovery Group, and Capital One.  Ms. Hyman no longer pursues her claim against the Pennsylvania State Police.

[2] Ms. Hyman omits the standard of review as the court is well aware of the pleading requirements and the standards governing motions to dismiss.

[3] Ms. Hyman no longer seeks relief against Col. Blocker in his individual capacity.

role in private evictions and repossessions when there is no apparent legal basis for such action." *Hensley v. Gassman*, 693 F.3d 681, 694 (6th Cir. 2012).

Similarly, it is also well established that the deprivation of a "legally protected property interest" including a "possessory interest in property invoke[s] due process protections" under the Fourteenth Amendment. *Abbot v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)). "It is also well established that possessory interests in property invoke procedural due process protections." *Abbot*, 164 F.3d at 146 (citing *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972)). "At the core" of these protections "is the right to advance notice of significant deprivations of liberty or property and a meaningful opportunity to be heard." *Abbot*, 164 F.3d at 146 (citing *LaChance v. Erickson*, 522 U.S 262 (1998)).

Armed with this jurisprudence, our Court of Appeals has held that police officers should know from established precedent "that their role is not to be participants in property deprivations without notice and an opportunity to be heard." *Id.* at 149. Such "curbside" justice is no justice at all, but "is precisely the situation and deprivation of rights to be avoided." *Id.*

Troopers Morris and Devlin are now being held to account for their curbside injustice, but they contend they did not engage in state action and that Trooper Morris was not personally involved in the unlawful repossession. These arguments are baseless.

Troopers Morris and Devlin undoubtedly engaged in state action. The state action test in the context of private repossessions "is whether the officer maintains neutrality or takes an active role in the repossession resulting in an unconstitutional deprivation." *Harvey v. Plains Township Police Dep't*, 635 F.3d 606, 609–10 (3d Cir. 2011). While the mere passive, neutral presence of a police officer does not alone constitute state action, police officers abandon neutrality as soon as they "affirmatively aid a repossession such that he can be said to have caused the constitutional

deprivation." *Id.* at 610; *Abbot*, 164 F.3d at 147 (advising debtor that other party had right to immediate possession of vehicle may be unconstitutional deprivation).

"Aid" in this context takes many forms, including "facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession." *Harvey*, 635 F.3d at 610. All facts and circumstances are considered, and may include, among other things, whether the officer: a) told the plaintiff the seizure was legal; b) ordered to allow the repossession; c) threatened arrest; d) intervened multiple times; and e) remained on the scene until the repossession was completed. *Id.* at 610 & n.3.

All of these circumstances were present here.  Troopers Devlin and Morris arrived at the scene at the request of the repo man.  Trooper Morris not only ordered Shyree out of the car to complete the repossession, but threatened to break the window, pull her out of the car, and arrest her for disorderly conduct.  After Makiba informed Trooper Morris what he was doing was unlawful, Trooper Morris brazenly admitted, "That's okay," signifying nothing in the world would stop him from completing the repossession—not Shyree, not Makiba, and not even the law he took an oath to enforce. Am. Compl. ¶ 50.   Trooper Morris also actively assisted in the repossession, as he arrived with Trooper Devlin and acted in concert with him by staying with him until the end of the repossession to ensure compliance with Trooper Devlin's order.  A reasonable jury can well find that the repo man would not have been able to repossess the vehicle but for the troopers' active assistance.  This conduct is sufficient to demonstrate both state action and Trooper Morris's personal involvement under *Abbott* and *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The Commonwealth argues Trooper Devlin's threat to arrest Shyree does not constitute affirmative aid because his threat was directed at Shyree, not Ms. Hyman.  Similarly, the Commonwealth claims the troopers' conduct cannot constitute affirmative aid because Shyree did

not own the Toyota. (Commonwealth's Br. at 10–11). These arguments are both odd and incorrect. The state action inquiry focuses on the conduct of the police officers and whether actively assisted by "facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession." *Harvey*, 635 F.3d at 610. In other words, the issue is the extent to which the troopers aided in the repossession. As a matter of logic and common sense, their level of affirmative aid does not depend upon who owns the car. Our Court of Appeals rejected a similar ownership argument in *Abbott*, 164 F.3d at 146 n.2.

The Commonwealth also apparently disputes the facts alleged in the Amended Complaint. They call Shyree a trespasser and claim the car was hooked to the tow truck by the time the officers arrived. These facts are nowhere in the Amended Complaint. Rather, the facts alleged by Ms. Hyman demonstrate Shyree was lawfully in Ms. Hyman's Toyota and that the *repo man* was trespassing, not Shyree.

The facts alleged in the Amended Complaint demonstrate Troopers Morris and Devlin affirmatively aided in the repossession. The videotape will bear this out, in spades. The Commonwealth's argument is meritless.

> **b. Ms. Hyman pleads sufficient facts to proceed on her claim against Col. Blocker in his official capacity.[4]**

As the Commonwealth correctly points out, Ms. Hyman sued Col. Blocker in his official capacity for prospective injunctive relief in the form of implementing policies, procedures, and/or customs which would stop the Pennsylvania State Police from assisting in civil repossessions without court order. The Commonwealth, however, incorrectly argues there are no facts plausibly demonstrating Col. Blocker has "personal involvement" or has "standing or influence" over Pennsylvania State Police policies and practices.

---

[4] Ms. Hyman no longer seeks relief against Troopers Morris and Devlin in their official capacities.

If there is any person in the Pennsylvania State Police who has standing or influence over policy or practice, it is Col. Blocker.  As the Commissioner of the Pennsylvania State Police, Col. Blocker is "officially responsible for ensuring that state troopers are trained not to interfere or take sides in civil repossessions." Am. Comp. ¶¶ 79, 108.  Col. Blocker's failure to provide any guidance by way of official policy in the area of private repossessions effectively constitutes an endorsement the Department's unconstitutional practice of actively assisting in private repossessions.  *Id.* ¶¶ 108–110.  If the Commissioner has no standing or influence over PSP policy, practice, and procedure, who does?  Ms. Hyman states a claim for relief.

Additionally, the Commonwealth's arguments as to Col. Blocker's personal involvement fails because he is sued in his official capacity.  The official capacity claim against him is treated as a claim against the Commonwealth. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "Because an official capacity suit is a suit against the [State], the claim does not depend on the personal involvement of the policymaking official in the alleged constitutional violations." *Doe v. Se. Delco Sch. Dist.*, 140 F. Supp. 3d 396, 400–01 (E.D. Pa. 2015).

### c.  Ms. Hyman does not seek relief under the substantive due process clause of the Fourteenth Amendment.

Ms. Hyman seeks relief under the Fourth Amendment and the Fourteenth Amendment's procedural due process clause. She does not assert a substantive due process claim under the Fourteenth Amendment. Accordingly, the Court need not consider the Commonwealth's argument Ms. Hyman's purported substantive due process claim must yield to the Fourth Amendment.

## III.    Conclusion

The law is clear that law enforcement cannot affirmatively aid in private repossessions, yet the Pennsylvania State Police does this as a matter of practice, and did so here.  The practice is so well established that its troopers think it's "okay."  The Police should have immediately ordered

the repo man off the premises and to abort the ex parte repossession in order to seek a court order. Instead, the Police lent their presence and power to effect the repo man's seizure of Plaintiff's property.  The Police and its officers are now being held to account for their indifference to Ms. Hyman's rights.   As Ms. Hyman pleads ample facts supporting her Fourth and Fourteenth Amendment claims, this Court should deny the Commonwealth's Motion to dismiss.

Respectfully submitted:


Date:   9/27/17                              /s/  Cary L. Flitter
                                             CARY L. FLITTER
                                             ANDREW MILZ
                                             JODY THOMAS LÓPEZ-JACOBS
                                             Attorneys for Plaintiff

                                             **FLITTER MILZ, P.C.**
                                             450 N. Narberth Avenue, Suite 101
                                             Narberth, PA 19072
                                             (610) 822-0782