IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA HYMAN, | ) | CIVIL ACTION NO. 3:17-89 |
| | ) | |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CAPITAL ONE AUTO FINANCE, | ) | |
| COMMONWEALTH RECOVERY | ) | |
| GROUP, INC., PENNSYLVANIA STATE | ) | |
| POLICE, COL. TYREE C. BLOCKER, | ) | |
| MICHAEL MORRIS, BRYAN DEVLIN, | ) | |
| JOHN DOE TROOPERS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court are two motions to dismiss. The first motion was filed by Defendants Commonwealth Recovery Group, Inc. ("Commonwealth Recovery") and Capital One Auto Finance ("Capital One"), who move to dismiss Counts III and IV of the Amended Complaint and to strike Plaintiff's punitive damages claim. (*See* ECF No. 41.) The second motion was filed by the Pennsylvania State Police, Col. Tyree C. Blocker, Trooper Michael Morris, Trooper Bryan Delvin, and John Doe Troopers 1-10 (collectively the "Commonwealth Defendants"), who move to dismiss Counts V and VI of the Amended Complaint. (*See* ECF No. 39.)

The motions have been fully briefed (*see* ECF Nos. 40, 43, 52, 53) and are ripe for disposition. For the reasons that follow, the Court will deny Capital One and Commonwealth

Recovery's motion to dismiss in its entirety (ECF No. 41). The Court will grant in part, and deny in part, the Commonwealth Defendants' motion to dismiss (ECF No. 39).

## II.     Jurisdiction

The Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over her related state law claims under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania.

## III.    Background

### A.     Factual Background[1]

This case involves the repossession of a car. In 2014, Plaintiff purchased a new Toyota Corolla. (ECF No. 27 at ¶ 19.) Capital One financed Plaintiff's purchase and obtained a security interest in the vehicle. (*Id.* at ¶ 20.) In 2016, Plaintiff was hospitalized because of an unspecified illness and requested that Capital One defer her auto payments. (*Id.* at ¶ 21.) Capital One considered Plaintiff's request but did not inform Plaintiff whether it would approve it. (*Id.* at ¶ 22.) Ultimately, and without notice to Plaintiff, Capital One "ordered" Commonwealth Recovery to repossess Plaintiff's automobile. (*Id.* at ¶ 23.)

The repossession occurred the evening of October 5, 2016. (*Id.* at ¶ 24.) Plaintiff and her partner, Shyree, heard a truck pulling up to Plaintiff's house. (*Id.*) When they peered out the window, they saw "a repo man" in the driveway attempting to repossess Plaintiff's car. (*Id.* at ¶ 25.) The driveway is part of Plaintiff's property. (*Id.*)

---

[1] The factual allegations contained in this section are derived from Plaintiff's Amended Complaint (ECF No. 27). The Court accepts these allegations as true for the sole purpose of deciding the pending motions.

Plaintiff went outside and "told the repo man to get off her property." (*Id.* at ¶ 30.) Shyree believed that the "repo man" was about to illegally repossess Plaintiff's vehicle and, in an attempt to prevent him from succeeding, got into Plaintiff's car and closed the door. (*Id.* at ¶ 31.) Plaintiff "demanded repeatedly" that the "repo man" vacate her property and told him he was "trespassing." (*Id.* at ¶ 32.) Despite Plaintiff's demands, the "repo man" remained on Plaintiff's property and attempted to repossess her vehicle. (*Id.* at ¶ 34.)

At some point, the "repo man" called the Pennsylvania State Police. (*Id.* at ¶ 40.) Shortly thereafter, multiple Pennsylvania State Troopers arrived at Plaintiff's residence, including Defendants Bryan Devlin and Michael Morris. (*Id.* at ¶ 41.)

The Pennsylvania State Troopers "assisted" the "repo man" in repossessing Plaintiff's vehicle (*id.* at ¶ 43), even though they "knew" that that neither Capital One nor the "repo man" had received a court order or writ authorizing them to seize Plaintiff's car. (*Id.* at ¶ 44.) In fact, at the time these events unfolded, "[n]o legal determination had been sought or made regarding entitlement to seize [Plaintiff's] car." (*Id.* at ¶ 45.) But this did not prevent "[o]ne of the troopers, believed to be Defendant Bryan Devlin[,]" from informing Plaintiff that "the repo man had the right to repossess the vehicle." (*Id.* at ¶ 46.)

At this juncture, Shyree was still inside the car, while Plaintiff, Trooper Devlin, and the "repo man" stood outside the vehicle. (*Id.* at ¶ 47.) Plaintiff called her daughter Makiba for advice. (*Id.*) Makiba, a law student, "politely told Trooper Devlin that his actions were in violation of the law, and that this was a purely civil matter." (*Id.* at 48.)

3

One of the Troopers[2] stated that "if she [Shyree] does not willingly come out [of the car] we are going to have to remove her."[3] (*Id.* at ¶ 50.) After Makiba, speaking over the cellphone, told the Troopers that the "police cannot enforce a civil contract" and that they were inappropriately taking sides between private parties in a civil dispute, one of the Troopers stated that "what's going to happen here today is we already spoke with the tower [and] they have to get the vehicle tonight, okay?" (*Id.*) One of the Troopers then said to Makiba, "[m]aam, maam, okay—if you're talking with the young lady in the car, okay, if you would please tell her to get out so these men can do their job." (*Id.*) Makiba told the Troopers that he was acting "unlawfully." (*Id.*) One of the Troopers responded, "[o]kay, you can file a complaint on me later. That's okay." (*Id.*)

---

[2] The Court notes that the portion of Plaintiff's Amended Complaint that recounts the videotaped interaction between the Makiba, Shyree, and the State Troopers does not clearly differentiate between statements made by Defendant Devlin and Defendant Morris. (*See* ECF No. 27 at ¶ 50). Instead, the Amended Complaint attributes the statements merely to "Trooper." (*Id.*) After reading the Amended Complaint, it initially appeared to the Court that Defendant Devlin had made all of the statements recounted in ¶ 50 (the paragraph containing the transcript), as the Amended Complaint alleges that Makiba and Plaintiff were speaking to Defendant Devlin in the preceding paragraphs. However, Plaintiff's reply brief alleges that Defendant Morris made at least some of these statements; Plaintiff asserts that Defendant Morris "ordered Shyree out of the car to complete the repossession [and] threatened to break the window, pull her out of the car, and arrest her for disorderly conduct." (ECF No. 53 at 7.) The Court cannot, at this juncture, ascertain which Trooper made which statement. Thus, the Court attributes these statements to "one of the Troopers."

"In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. CV 16-2499, 2017 WL 1105648, at *2 (E.D. Pa. Mar. 24, 2017) (internal citations omitted). The Court construes the Amended Complaint liberally and finds that Plaintiff alleged sufficient facts to give rise to a reasonable inference that both Defendant Devlin and Defendant Morris made some of the statements attributed to "Trooper." Accordingly, as noted below, the Court finds that Plaintiff stated plausible claims against both Defendant Devlin and Defendant Morris.

[3] The exchange alleged in this paragraph was allegedly captured by cellphone video shot at the scene. (*See id.* at ¶¶ 49-50.) Portions of the exchange are reproduced here.

Makiba told one of the Troopers "[s]ir[,] you cannot ask her to get out of the car."[4] (*Id.*) One of the Troopers responded by threatening to "break the window" and remove Shyree from the car if she did not exit on her own. (*Id.*) Makiba informed one of the Troopers that she was recording him. (*Id.*) The Trooper responded "[i]t's okay[,] you can record it, I'm telling you what's going to happen. She is going to be removed, she is going to be arrested for disorderly conduct and the car is still going to get taken." (*Id.*)

Makiba again told one of the Troopers that he was "breaking the law," to which the Trooper responded "[t]hat's okay."[5] (*Id.*) One of the Troopers asked if Makiba was going to ask Shyree to exit the vehicle. (*Id.*) Makiba stated that Shyree would comply with the Trooper's command but reiterated that the Trooper was unlawfully enforcing a civil contract in the absence of a court order. (*Id.*) One of the Troopers told Makiba that she could "contact the state police, talk to my sergeant, [and that] I am the shift supervisor tonight, [so] you can file a complaint against me." (*Id.*) After more back and forth between Makiba and one of the Troopers, the Trooper instructed Makiba "to call her [Shyree] and tell her to [comply with my order] and once I know that she is going to get out [of the car] we'll be okay." (*Id.*)

Makiba hung up her call with the Trooper and called Shyree, who was still sitting inside Plaintiff's vehicle.[6] (*Id.*) One of the Troopers, standing outside the car, stated "I'm not going to wait all day." (*Id.*) The Trooper then told Shyree "[y]ou got about 30 more seconds [*sic*]." (*Id.*)

---

[4] The exchange alleged in this paragraph was allegedly captured by cellphone video shot at the scene. (*See id.* at ¶¶ 49-50.) Portions of the exchange are reproduced here.

[5] The exchange alleged in this paragraph was allegedly captured by cellphone video shot at the scene. (*See id.* at ¶¶ 49-50.) Portions of the exchange are reproduced here.

[6] The exchange alleged in this paragraph was allegedly captured by cellphone video shot at the scene. (*See id.* at ¶¶ 49-50.) Portions of the exchange are reproduced here.

Shortly thereafter, one of the Troopers informed Shyree "[y]ou've got 30 seconds to come out or we breaking the window and coming in [*sic*], how long have we been dealing with this? I asked nicely, I explained to you what is going to happen, okay?" (*Id.*) One of the Troopers then informed Shyree that "[i]f you refuse to come out we are going to have to remove you and I do not want to do that for a repossessed vehicle." (*Id.*)

Shyree complied with the Trooper's command and exited the vehicle. (*Id.* at ¶ 51.) Once Shyree had exited the vehicle, the Trooper "directed" Plaintiff to "surrender her vehicle to the repo man." (*Id.*)

### B.    Procedural Background

Plaintiff filed her Complaint before this Court on May 30, 2017 (*see* ECF No. 1), followed by an Amended Complaint on August 4, 2017 (*see* ECF No. 27). Plaintiff asserts six counts in her Amended Complaint: (1) a Fair Debt Collection Practices Act Claim against Commonwealth Recovery (*id.* at ¶¶ 83-87); (2) a claim under the Pennsylvania Uniform Commercial Code against Capital One (*id.* at ¶¶ 88-91); (3) a conversion/trespass to chattels claim against Capital One and Commonwealth Recovery (*id.* at ¶¶ 92-96); (4) a trespass claim against Capital One and Commonwealth Recovery (*id.* at ¶¶ 97-100); (5) a 42 U.S.C. § 1983 claim against the Pennsylvania State Police, Defendants Blocker, Morris, Devlin, and John Doe Troopers 1-10 in their official capacities (*id.* at ¶¶ 101-111); and (6) a 42 U.S.C. § 1983 claim against the Pennsylvania State Police, Defendants Blocker, Morris, Devlin, and John Doe Troopers 1-10 in their individual capacities (*id.* at ¶¶ 111-119). Additionally, Plaintiff seeks punitive damages against Capital One and Commonwealth Recovery for her conversion/trespass to chattels (Count III) and trespass (Count IV) claims.

In response, Capital One and Commonwealth Recovery move to dismiss Plaintiff's conversion/trespass to chattels claim (Count III), her trespass claim (Count IV), and her prayer for punitive damages. (*See* ECF No. 41.) Capital One and Commonwealth Recovery do not ask this Court to dismiss Plaintiff's Fair Debt Collection Practices Act Claim (Count I) or her claim under the Pennsylvania Uniform Commercial Code (Count II).

The Commonwealth Defendants move to dismiss Plaintiff's § 1983 claims (Count IV and Count V) in their entirety. (*See* ECF No. 39.)

## IV.    Legal Standard

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[7] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212,

---

[7] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## V. Discussion

### A. The Court Will Not Address Counts I and II Because Capital One and Commonwealth Recovery Have Not Moved to Dismiss These Claims

As noted above, Capital One and Commonwealth Recovery do not ask this Court to dismiss Plaintiff's Fair Debt Collection Practices Act Claim (Count I) or her claim under the Pennsylvania Uniform Commercial Code (Count II). (*See, generally*, ECF Nos. 41, 43.) Accordingly, the Court will not evaluate these claims at this juncture.

### B. Plaintiff Has Sufficiently Alleged Her Conversion and Trespass to Chattels Claims Against Capital One and Commonwealth Recovery (Count III) to Survive a Motion to Dismiss

Capital One and Commonwealth Recovery present two arguments for why this Court should dismiss Plaintiff's conversion and trespass to chattels claims. (*See* ECF No. 43 at 4.)[8] First, they argue that Plaintiff has "failed to assert the necessary elements of such claim(s) [because]

---

[8] The Court notes that pagination is absent from the joint Brief in Support of Motion to Dismiss filed by Defendants Capital One and Commonwealth Recovery. (*See* ECF No. 43.) The Court manually calculated page numbers starting with "1" on the first page.

8

Plaintiff has failed to plead ownership of the motor vehicle in question."[9] (*Id.*) Second, Capital

One and Commonwealth Recovery argue that they cannot be liable for conversion or trespass to

chattels because they believe that Plaintiff's Amended Complaint indicates that Commonwealth

Recovery's "repo man" "merely acted at the direction of the Pennsylvania State Police." (*Id.*)

In response to Capital One and Commonwealth Recovery's first argument, Plaintiff

contends that she sufficiently pleaded a cause of action for conversion and trespass to chattels

because she alleged that she purchased the vehicle. (ECF No. 52 at 4.) Plaintiff further avers that

Capital One's security interest in the vehicle did not amount to outright ownership. (*Id.*) In

response to Capital One and Commonwealth Recovery's second argument, Plaintiff asserts that

"it simply does not matter whether [Capital One and Commonwealth Recovery] acted at the

direction of the police." (*Id.* at 5.)

"A plaintiff has a cause of action in conversion if he or she had actual or constructive

possession of a chattel at the time of the alleged conversion." *Cedarbrook Plaza Inc. v. Storage

Partners of Cheltenham, L.P.*, No. 266 EDA 2015, 2016 WL 193432, at *3 (Pa. Super. Ct. Jan. 15, 2016)

(quoting *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. 2003)); *McKesson Corp. v.

Campbell*, No. 2579 EDA 2014, 2015 WL 7571502, at *5 (Pa. Super. Ct. Nov. 24, 2015) (same); *see

also Grimes v. Polymer Dynamics*, No. 378 EDA 2015, 2015 WL 6507870, at *5 (Pa. Super. Ct. Oct. 27,

---

[9] Capital One and Commonwealth Recovery also allege that "Plaintiff is not the rightful owner of the motor vehicle in question" because Capital One held a security interest in the automobile. (*Id.*) However, the Court may not consider these factual disputes at the motion to dismiss stage. Rather, when the complaint contains "well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The Amended Complaint alleges that Plaintiff purchased and was in possession of the car and does not state that Capital One "owned" Plaintiff's automobile. (*See, generally*, ECF No. 27.) The factual dispute about whether Plaintiff, or Capital One, owned the automobile is not presently before the Court and is more appropriately decided at a later stage in this litigation.

9

2015) ("to maintain an action for conversion, one 'must have . . . the right to immediate possession at the time of the conversion.'") (quoting *Potts Run Coal Co. v. Benjamin Coal Co.*, 426 A.2d 1175, 1178 (Pa. Super. 1981)).

As this Court recently stated, "[u]nder Pennsylvania law, conversion is (1) the deprivation of another's right in, or use or possession of, property, (2) without the owner's consent, and (3) without lawful justification." *Avanti Wind Sys., Inc. v. Shattell*, No. CV 3:14-98, 2016 WL 3211990, at *22 (W.D. Pa. June 9, 2016) (Gibson, J.) (citing *Crown Coal & Coke Co. v. Compass Point Resources, LLC*, 2009 WL 891869, at *8 (W.D. Pa. March 31, 2009) (internal citations omitted)).

In regards to the third element—that the property is taken "without lawful justification"—the Court turns to 13 Pa. C.S.A. § 9609, which "deals with a secured party's right to take possession after a default." *Rivera v. Dealer Funding, LLC*, 178 F. Supp. 3d 272, 278 (E.D. Pa. 2016). Under 13 Pa. C.S.A. § 9609(a)-(b), a secured party may "take possession of the collateral . . . without judicial process if it proceeds without breach of the peace." 13 Pa. C.S.A. § 9609.

"Pennsylvania courts have not specifically defined what actions constitute a breach of the peace, and there is very little case-law interpreting a breach of the peace in the repossession context." *Rivera*, 178 F. Supp. 3d at 278. However, the Superior Court of Pennsylvania has recognized, albeit in dicta, "a line of authority that says that use of law enforcement agents in repossessions itself creates a constructive breach of the peace." *Jackson v. Richards 5 & 10 Inc.*, 289 Pa. Super. 445, 459, 433 A.2d 888, 895 (1981) (citing *Walker v. Walthall*, 121 Ariz. 121, 588 P.2d 863 (1978)). Moreover, Comment 3 of the Pennsylvania Uniform Commercial Code[10] specifically

---

[10] The Supreme Court of Pennsylvania has advised that "[o]fficial comments are to be given weight in the construction of statutes." *Lessner v. Rubinson*, 527 Pa. 393, 398, 592 A.2d 678, 680 (1991). *See Cardiello v.*

provides that § 9609(a)-(b) "*does not* authorize a secured party who repossesses without judicial process to utilize the assistance of a law-enforcement officer." § 9609, cmt. 3. (emphasis added).

The Court finds that Plaintiff has alleged sufficient facts to plausibly satisfy all three elements of conversion. Plaintiff alleges (1) that Capital One and Commonwealth Recovery, through their agent the "repo man," deprived Plaintiff of her possessory right to her automobile when he repossessed it; (2) that the "repo man" interfered with her possessory interest without her consent and, in fact, despite her repeated instructions to "get off her property" (ECF No. 27 at ¶¶ 30, 32); and (3) that the "repo man" obtained the affirmative assistance of multiple State Police Troopers (*id.* at ¶¶ 40-52) which, if true, could have constituted a breach of the peace—in fact, Plaintiff claims that "repo man" summoned the State Troopers specifically to help him repossess Plaintiff's car after Plaintiff's repeated demands that "repo man" vacate her property. (*Id.* at ¶ 40.) Accordingly, Plaintiff has pleaded a plausible conversion claim against Capital One and Commonwealth Recovery. *See Iqbal*, 556 U.S. at 679.

Capital One and Commonwealth Recovery's argument that Plaintiff's conversion claim must fail because Capital One had a security interest in Plaintiff's automobile does not persuade the Court. This Court is not aware of any relevant authority requiring that a plaintiff have an exclusive ownership interest in the property in question to bring a conversion claim.[11] Rather, Pennsylvania Courts require that the plaintiff have "the right to immediate possession at the time of the conversion." *Grimes*, 2015 WL 6507870, at *5 (internal citations omitted). Moreover, to the

---

*Arbogast*, 533 F. App'x 150, 156 (3d Cir. 2013) (explaining that this principle "is derived from Pennsylvania statutory law," specifically 1 Pa. Stat. and Cons. Stat. Ann. § 1939).

[11] The Court notes that the lone case cited by Capital One and Commonwealth Recovery to support this argument is inapposite, as that case interpreted New Jersey law. *See Washington v. Capital One Auto Fin., Inc.*, 2011 U.S. Dist. LEXIS 79005, *6, 2011 WL 2970964.

extent there is a factual dispute about who owned the automobile, these questions are more properly determined at a later stage in litigation. Furthermore, Plaintiff plausibly had a right to immediate possession at the time of the conversion; Plaintiff's well-pleaded facts give rise to a reasonable inference that the "repo man" committed a breach of the peace by failing to vacate Plaintiff's private property and by summoning law enforcement officers to assist his repossession, which would nullify his right to repossess the automobile without a court order under § 9609(a)-(b).

The Court is similarly unmoved by Capital One and Commonwealth Recovery's argument that Plaintiff cannot prevail on her conversion and trespass to chattels claims because "repo man" acted at the behest of the State Trooper Defendants. Capital One and Commonwealth Recovery have not cited any authority to support their contention that the State Trooper Defendants' involvement shields Capital One and Commonwealth Recovery from liability. Moreover, their argument is particularly farfetched given that the State Trooper Defendants' arrived at the scene only after the "repo man" summoned them to help him repossess Plaintiff's car.

In conclusion, the Court will deny Capital One and Commonwealth Recovery's motion to dismiss Plaintiff's conversion and trespass to chattels claims.[12]

---

[12] The Court need not independently analyze Plaintiff's trespass to chattel claim because Plaintiff's conversion claim survives the motion to dismiss and tort of trespass to chattel entails a lesser interference in the property of another than the tort of conversion. *See QVC, Inc. v. Resultly, LLC,* 159 F. Supp. 3d 576, 599 (E.D. Pa. 2016) (noting that while "[t]he elements of trespass to chattels and conversion—both intentional torts—are essentially the same . . . '[t]he difference is that conversion entails a more serious deprivation of the owner's rights such that an award of the full value of the property is appropriate.'") (quoting *Creative Dimensions in Mgmt., Inc. v. Thomas Grp., Inc.,* No. 96–6318, 1999 WL 225887, at *3 (E.D. Pa. Apr. 16, 1999)).

12

**C.** **Plaintiff Has Sufficiently Alleged Her Trespass Claim Against Capital One and Commonwealth Recovery (Count IV) to Survive a Motion to Dismiss**

Capital One and Commonwealth Recovery argue that Plaintiff cannot maintain a cause of action for trespass because the "repo man" "lawfully entered Plaintiff's property PRIOR to Plaintiff allegedly telling [the "repo man"] to 'get off her property.'" (ECF No. 43 at 5) (emphasis in original.) Capital One and Commonwealth Recovery further argue that Plaintiff's trespass claim is tenuous because the "repo man" repossessed Plaintiff's car in the driveway of Plaintiff's house, an area with less Constitutional protection than the home or the curtilage. (*Id.*) Capital One and Commonwealth Recovery additionally assert that the fact that the Amended Complaint does not mention any "no trespassing signs" around Plaintiff's property further diminishes Plaintiff's trespass claim. (*Id.* at 6.) Finally, Capital One and Commonwealth Recovery argue that trespass could not have occurred because "repo man" lawfully repossessed the property under 13 Pa. C.S. § 9609. (*Id.*)

In response, Plaintiff asserts that Capital One and Commonwealth Recovery trespassed because they "lost" whatever "limited privilege [they had] to repossess the car on [Plaintiff's] property for two independent reasons." (ECF No. 52 at 6.) First, by remaining on Plaintiff's private property after Plaintiff repeatedly told "repo man" to leave. (*Id.*) Second, by breaching the peace by "calling armed law enforcement on the scene" to assist in the repossession of Plaintiff's vehicle. (*Id.*)

"Pennsylvania follows the Second Restatement of Torts with respect to claims for trespass." *MD MALL ASSOCIATES, LLC v. CSX TRANSPORTATION, INC.*, No. CV 11-4068, 2017 WL 6557599, at *17 (E.D. Pa. Dec. 22, 2017) (citing *Gilbert v. Synagro Cent., LLC*, 90 A.3d 37,

52 (Pa. Super. Ct. 2014)); *see also Moss v. Aaron's, Inc.,* 140 F. Supp. 3d 441, 446 (E.D. Pa. 2015). "Under the Restatement, a person may be liable for trespass 'if he intentionally . . . enters land in the possession of [another], or causes a thing or a third person to do so.'" *MD MALL ASSOCIATES, LLC,* 2017 WL 6557599, at \*17 (quoting Restatement (Second) of Torts § 158(a) (Am. Law Inst. 1965)); *see also Boring v. Google Inc.,* 362 F. App'x 273, 280 (3d Cir. 2010) (defining trespass as an "'unprivileged, intentional intrusion upon land in possession of another.'") (quoting *Graham Oil Co. v. BP Oil Co.,* 885 F. Supp. 716, 725 (W.D. Pa. 1994) (citing *Kopka v. Bell Tel. Co.,* 371 Pa. 444, 91 A.2d 232, 235 (1952))). Under Pennsylvania law, trespass "encompasses intrusions that begin as privileged but ultimately exceed the scope of the privilege." *Acad. Indus., Inc. v. PNC Bank, N.A.,* No. 0634 JULY TERM 2000, 2002 WL 1472342, at \*16 (Pa. Com. Pl. May 20, 2002) (citing *Commonwealth v. Johnston,* 438 Pa. 485, 489, 263 A.2d 376, 379 (1970)).

Plaintiff has alleged facts giving rise to a plausible trespass claim. Plaintiff claims that "repo man" entered her private property and remained on her property after she told him to leave. (ECF No. 27 at ¶¶ 30, 32.) Moreover, as the Court noted in Section V.B., *supra,* Plaintiff alleged sufficient facts to give rise to a reasonable inference that Capital One and Commonwealth Recovery "breached the peace" by enlisting the State Trooper Defendants to help the "repo man" repossess Plaintiff's vehicle over her protests. Thus, Plaintiff has alleged facts sufficient to support a reasonable inference that Capital One and Commonwealth Recovery "exceed the scope of the privilege" they were afforded under 13 Pa. C.S. § 9609 because they remained on Plaintiff's property after their limited privilege was extinguished. Accordingly, Plaintiff alleged a plausible trespass claim.

The Court is not persuaded by Capital One and Commonwealth Recovery's argument that Plaintiff cannot bring a trespass claim due to the fact that "repo man" had a limited right to repossess Plaintiff's vehicle. For instance, while they cite *Coast Auto. Group v. VW Credit, Inc.*, 1998 U.S. Dist. LEXIS 23389 (D. NJ. 1998) for the proposition that "[i]f an individual has a cognizable right to enter the property, no action for trespass may lie" (ECF No. 43 at 5), this argument is clearly untenable. As the Court has already noted, Plaintiff has alleged sufficient facts to give rise to a reasonable inference that "repo man's" right to enter her property under 13 Pa. C.S. § 9609 was extinguished once "repo man" enlisted the help of the State Trooper Defendants. Further, *Coast Auto. Group* is inapposite because was written at a different stage in litigation—the motion for summary judgment stage, not the motion to dismiss stage. *Coast Auto. Group* 1998 U.S. Dist. LEXIS 23389, *5 (discussing summary judgment standard).[13]

At this early stage, Plaintiff need only plead sufficient facts to give rise to a plausible trespass claim. Plaintiff has satisfied her burden. Accordingly, the Court will deny Capital One and Commonwealth Recovery's motion to dismiss Plaintiff's trespass claim.

## D.    The Court Will Not Dismiss Plaintiff's Prayer for Punitive Damages at this Early Juncture

Capital One and Commonwealth Recovery further argue that the Court should dismiss Plaintiff's punitive damages claims for counts III and IV. (*See* ECF No. 43 at 6.) Capital One and Commonwealth Recovery assert that punitive damages are not warranted because Plaintiff has

---

[13] The remaining cases cited by Capital One and Commonwealth Recovery completely miss the mark. These cases, such as *Com. v. Beamer*, No. 608 MDA 2014, 2015 WL 7458855 (Pa. Super. Ct. Mar. 24, 2015) and *Hordych v. Borough of N. E.*, 2011 U.S. Dist. LEXIS 79948, 2011 WL 3021736 (WD. PA) involve Fourth Amendment challenges to warrantless searches, not civil trespass claims.

15

merely brought ordinary tort claims against them. (*Id.*) Capital One and Commonwealth Recovery additionally argue that punitive damages should not be awarded because, in their view, Plaintiff's Amended Complaint asserts that "the repo man was merely acting at the direction of the Pennsylvania State Police." (*Id.* at 7.) Capital One and Commonwealth Recovery finally contend that punitive damages are not warranted because Plaintiff did not allege that their actions were willful, wanton, malicious, or reckless. (*Id.*)

In response, Plaintiff asserts that she sufficiently alleged facts to support her punitive damages claim. Specifically, Plaintiff points to portions of her Amended Complaint, such as ¶ 96 and ¶ 100, where she alleged that the suffered damages because of Capital One and Commonwealth Recovery's "intentional, willful and reckless conduct . . .". (ECF No. 27 at ¶¶ 96, 100.)

As this Court recently explained,

Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 121, 870 A.2d 766, 770 (2005) (*citing Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984)). "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Id.* (*citing SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702, 704 (1991)).

"[W]hen assessing the propriety of the imposition of punitive damages, [t]he state of mind of the actor is vital." *Hutchison ex rel. Hutchison*, 582 Pa. at 122, 870 A.2d 766 (internal quotations and citations omitted.). "[A] punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Id.* at 124, 870 A.2d 766, 770; *see also Scott v. Burke*, No. 2:13-CV-278, 2013 WL 4648402, at *3 (W.D. Pa. 2013) (same).

*Lopez v. CSX Transportation, Inc.*, 269 F. Supp. 3d 668 (W.D. Pa. 2017) (Gibson, J.).

"Under Pennsylvania law, the question of punitive damages is usually determined by the trier of fact, and the Court is to decide the issue only when no reasonable inference from the facts alleged supports a punitive award." *Wilson v. Smith*, No. 3:16-CV-34, 2016 WL 4775740, at *4 (W.D. Pa. Sept. 13, 2016) (Gibson, J.) (quoting *Anderson v. Nationwide Ins. Enter.*, 187 F. Supp. 2d 447, 460 (W.D. Pa. 2002)).

Construing the Amended Complaint liberally, Plaintiff has alleged facts that could support a reasonable inference that punitive damages are appropriate. Plaintiff alleged that Capital One and Commonwealth Recovery intentionally repossessed Plaintiff's car after their license to do so under § 9609 had been extinguished. (*See* ECF No. 27 at ¶ 96.) Plaintiff also alleged that Capital One and Commonwealth Recovery intentionally trespassed on Plaintiff's property by failing to vacate her driveway when Plaintiff demanded that the "repo man" leave. (*See* ECF No. 27 at ¶ 100.) Accordingly, Plaintiff has sufficiently alleged the requisite state of mind to support a punitive damages claim. Therefore, the Court will deny Capital One and Commonwealth Recovery's motion to dismiss Plaintiff's punitive damages claim.

## E. Plaintiff Has Sufficiently Alleged Her § 1983 Claim Against Defendants Devlin and Morris in their Individual Capacities (Count VI) to Survive a Motion to Dismiss

The Commonwealth Defendants argue that the Court should dismiss Plaintiff's § 1983 claim against Defendants Devlin and Morris in their individual capacities. The Commonwealth Defendants argue that Plaintiff failed to allege violations of the Fourth and Fourteenth Amendments because the Defendants Devlin and Morris merely maintained the peace and did not affirmatively assist in the repossession. (ECF No. 40 at 10.)

17

In response, Plaintiff argues that she sufficiently pleaded a Fourth Amendment claim for

an unreasonable seizure of her automobile and a Fourteenth Amendment claim for a violation of

procedural due process. (ECF No. 53 at 5-6.) Plaintiff avers that the Defendants Devlin and Morris

deprived her of her constitutional rights under the color of state law because they actively assisted

in the repossession. (*Id.* at 6.)

Plaintiff asserts her constitutional claims against Defendants Devlin and Morris under 42

U.S.C. § 1983, which provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct.

2250, 2254–55, 101 L. Ed. 2d 40 (U.S. 1988) (internal citations omitted); *Reihner v. Cty. of*

*Washington, Pennsylvania*, 672 F. App'x 142, 144 (3d Cir. 2016) (same); *Yoder v. MacMain Law Grp.,*

*LLC*, 691 F. App'x 59, 60 (3d Cir. 2017).

As explained above, Plaintiff alleges that the Defendants Devlin and Morris violated her

Fourth Amendment right against unreasonable seizure and her Fourteenth Amendment right to

procedural due process. (*See* ECF No. 53 at 5-6.) The Court will analyze these claims below.

## 1. Plaintiff Has Sufficiently Alleged Constitutional Violations Under the Fourth and Fourteenth Amendments

"The Fourth Amendment, made applicable to the States by the Fourteenth, *Ker v. California*, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963), provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .'". *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61, 113 S. Ct. 538, 543, 121 L. Ed. 2d 450 (1992). "In order to establish a claim under the Fourth Amendment, plaintiff must show that the actions of the defendant: (1) constituted a 'search' or 'seizure;' and (2) were unreasonable in light of the circumstances." *Brown v. City of Philadelphia*, No. 10-CV-2687, 2012 WL 1758172, at *3 (E.D. Pa. May 16, 2012). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal*, 506 U.S. at 61, 113 S. Ct. at 543 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). "When analyzing whether such an interference occurred, it is of no import that the officers did not take custody of plaintiff's property as long as the officers participated in the seizure." *Brown*, 2012 WL 1758172, at *3 (citing *Gale v. Storti*, 608 F. Supp. 2d 629, 634 (E.D. Pa. 2009)).

"The [F]ourteenth [A]mendment prohibits state deprivations of life, liberty, or property without due process of law." *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984). As the Third Circuit has repeatedly noted, "the core of procedural due process jurisprudence is the right to advance notice . . . and to a meaningful opportunity to be heard." *Mir v. Behnke*, 680 F. App'x 126, 129–30 (3d Cir. 2017) (citing *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (internal quotation marks omitted)). Third Circuit has explained that "[i]t is elementary that procedural

19

due process is implicated only where someone has claimed that there has been a taking or deprivation of a legally protected liberty or property interest." *Abbott,* 164 F.3d at 146 (citing *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Of particular importance here, it is "well established that possessory interests in property invoke procedural due process protections." *Abbott,* 164 F.3d at 146 (citing *Fuentes v. Shevin,* 407 U.S. 67, 87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).

Plaintiff has sufficiently alleged a plausible Fourth Amendment claim against Defendants Devlin and Morris. Plaintiff alleges that the Defendants Devlin and Morris assisted in the repossession of her car, in which she had a possessory interest. The repossession constitutes a seizure because it is a "meaningful interference" with Plaintiff's possessory interest. *See Soldal,* 506 U.S. at 61, 113 S. Ct. at 543. The fact that the officers did not physically take custody of Plaintiff's car is irrelevant, as Plaintiff has alleged that they affirmatively participated in the seizure. *See Brown,* 2012 WL 1758172, at *3. Furthermore, Plaintiff has alleged facts sufficient to form a reasonable inference that the seizure was unreasonable. Therefore, Plaintiff has alleged a plausible Fourth Amendment violation.

Plaintiff has also alleged a plausible Fourteenth Amendment claim against Defendants Devlin and Morris. Plaintiff asserts that she neither had notice of the repossession nor an opportunity to be heard before Defendants Devlin and Morris assisted the "repo man" in his repossession of Plaintiff's car. Therefore, Plaintiff has stated a procedural due process claim. *See Abbott,* 164 F.3d at 147 (reversing district court and holding that the plaintiff had a "strong claim" against constable for violating plaintiff's procedural due process rights when constable, without

20

giving plaintiff advanced notice and an opportunity to be heard, assisted plaintiff's ex-wife in repossessing plaintiff's automobile).

Having determined that Plaintiff has alleged plausible constitutional violations, the Court must next determine whether "the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48, 108 S. Ct at 2254–55. As explained below, the Court finds that Plaintiff has alleged facts sufficient to give rise to a reasonable inference that the Defendants Devlin and Morris committed the deprivations while operating under the color of state law.

## 2. Plaintiff Has Sufficiently Alleged that Defendants Devlin and Morris Acted Under the Color of State Law

The Third Circuit has "considered state action in the context of private repossessions," explaining that "[t]he test is whether the officer maintains neutrality or takes an active role in the repossession resulting in an unconstitutional deprivation." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609–10 (3d Cir. 2011) (citing *Abbot*, 164 F.3d at 147.) "The mere presence of police at the scene of a private repossession does not, alone, constitute state action." *Harvey*, 635 F.3d at 610 (citing *Abbot*, 164 F.3d at 147.) The relevant inquiry "is whether an officer affirmatively aided a repossession such that he can be said to have caused the constitutional deprivation." *Harvey*, 635 F.3d at 610 (citing *Abbot*, 164 F.3d at 147.) "Such aid may take the form of facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession." *Harvey*, 635 F.3d at 610 (internal citations omitted).

Plaintiff has alleged sufficient facts to give rise to a reasonable inference that Defendant Devlin and Morris' actions constituted state action. Plaintiff alleges that the Defendants Devlin and Morris assisted the repossession in several ways. For example, one of the State Trooper

21

Defendants told Plaintiff that "the repo man had the right to repossess the vehicle." (ECF No. 27 at ¶ 46.) Plaintiff also claims that one of the Troopers threatened to remove Shyree from the car (*id.* at ¶ 50) and told Makiba that the police were there to "get the vehicle." (*Id.*) Plaintiff further states that one of the Troopers threatened to "break the window" and remove Shyree from the car if she did not get out the car, and even threatened to arrest her for disorderly conduct if she did not vacate the vehicle and allow the "repo man" to repossess it. (*Id.*) Plaintiff additionally alleges that after Shyree exited the car, one of the Troopers "directed" Plaintiff to "surrender her vehicle to the repo man." (*Id.* at ¶ 51.) Plaintiff's allegations, if true, plausibly support a finding that the State Trooper Defendants' conduct constituted state action.

### 3. Defendants Devlin and Morris Are Not Shielded By Qualified Immunity[14]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Supreme Court has explained that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231, 129 S. Ct. at 815. "Because qualified immunity bestows immunity from suit, the Supreme Court 'repeatedly ha[s]

---

[14] The Court notes that while the Commonwealth Defendants made a passing reference to "qualified immunity" in their Motion to Dismiss, neither Plaintiff nor the Commonwealth Defendants addressed the issue of qualified immunity in their briefs. Despite this omission, the Court will examine the issue of qualified immunity at this early stage of this litigation.

stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)); *see also Conte v. Rios*, 658 F. App'x 639, 642 (3d Cir. 2016).

"To resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 241 (3d Cir. 2016) (citing *Pearson*, 555 U.S. at 232).[15]

### i. Plaintiff Sufficiently Alleged Constitutional Violations of Her Fourth and Fourteenth Amendment Rights

The Court held, *supra*, that Plaintiff sufficiently alleged violations of her Fourth Amendment and Fourteenth Amendment constitutional rights. The only remaining question is whether these rights were "clearly established" at the time of the repossession.

### ii. In October 2016, It Was Clearly Established that Law Enforcement Officers Assisting in a Private Repossession Could Constitute State Action

"'A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *Mammaro v. New Jersey Div. of Child Prot. &*

---

[15] As the Supreme Court has repeatedly explained, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42, 131 S. Ct. 2074, 2083-84, 179 L. Ed. 2d 1149 (2011)).

*Permanency*, 814 F.3d 164, 169 (3d Cir. 2016), as amended (Mar. 21, 2016), cert. denied, 137 S. Ct. 161, 196 L. Ed. 2d 121 (2016) (same). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Mammaro*, 814 F.3d at 169 (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001) (internal quotation marks omitted)).

"In conducting the inquiry into whether a right is clearly established, we look first for 'applicable Supreme Court precedent.'" B*arna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (quoting *Mammaro*, 814 F.3d at 169)). If no applicable Supreme Court authority exists, courts "consider whether there is a case of controlling authority in [their] jurisdiction or a 'robust consensus of cases of persuasive authority' in the Courts of Appeals [that] could clearly establish a right for purposes of qualified immunity." *Barna*, 877 F.3d at 142 (quoting *Mammaro*, 814 F.3d at 169). As the Third Circuit has explained, "[t]he authority need not be 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Barna*, 877 F.3d at 142 (quoting *al-Kidd*, 563 U.S. at 741).

In *Harvey*, published in 2011, the Third Circuit held that "in the context of private repossessions," the test for whether a police officer acts under the color of state law "is whether the officer maintains neutrality or [instead] takes an active role in the repossession resulting in an unconstitutional deprivation." *Harvey*, 635 F.3d at 609–10 (noting that "the relevant inquiry . . . is whether an officer affirmatively aided a repossession such that he can be said to have caused the constitutional deprivation," and explaining that "[s]uch aid may take the form of facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession"); *see also Mitchell v. Gieda*, 215 F. App'x 163, 165 (3d Cir. 2007) (discussing that an officer's presence at

24

a private repossession may constitute state action if "accompanied by affirmative intervention, aid, intimidation, or other use of power which converts him from a neutral third party to, in effect, an assistant of the repossessing party.")[16]

At the time the "repo man" repossessed Plaintiff's vehicle in October 2016, it was clearly established that that an officer's conduct during a civil repossession could constitute state action if the officer ceased to be neutral presence and affirmatively aided the creditor's attempt to repossess the debtor's property. *See Harvey*, 635 F.3d at 609–11; *Mitchell*, 215 F. App'x at 165. Thus, a reasonable officer should have known that affirmatively assisting in a private repossession would violate a debtor's Fourth and Fourteenth Amendment rights. Accordingly, Defendants Devlin and Morris were on notice that their conduct was constitutionally prohibited. Therefore, Defendants Devlin and Morris are not entitled to qualified immunity.

### 4. Conclusion

In conclusion, Plaintiff has alleged facts sufficient to state plausible Fourth and Fourteenth Amendment claims against Defendants Devlin and Morris. Moreover, Defendants Devlin and

---

[16] The Court notes that other Courts of Appeals apply the same test as applied by the Third Circuit, indicating a "robust consensus of cases of persuasive authority" on the issue of police involvement in private repossessions. *See, e.g, Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004) ("officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor."); *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (state action exists "when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to 'stand by in case of trouble' is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action."); *Hensley v. Gassman*, 693 F.3d 681, 689 (6th Cir. 2012) (noting that "the likelihood that state action will be found increases when officers take a more active role in the repossession" because "[a]t some point, as police involvement becomes increasingly important, repossession by private individuals assumes the character of state action."); *Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999) (stating that "[w]hen an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action").

Morris are not shielded by qualified immunity. Therefore, the Court will deny the Commonwealth Defendants' motion to dismiss Plaintiff's claims against Defendants Devlin and Morris in their individual capacities.

### F. The Court Will Dismiss Plaintiff's § 1983 Claim Against Col. Blocker in His Official Capacity (Count V)[17]

Plaintiff sues Col. Blocker in his official capacity for violations of the Fourth and Fourteenth Amendment. Plaintiff seeks "[p]rospective injunctive relief directing the [Commonwealth] Defendants to establish and implement policies, procedures and/or customs for the Pennsylvania State Police to refrain from assisting in civil repossessions without a court order." (ECF No. 27 at ¶ 111(a).) The Court need not address the merits of Plaintiff's claims against Col. Blocker because Plaintiff lacks standing to bring her claim for prospective injunctive relief.

#### 1. Plaintiff Lacks Standing to Bring a Claim for Prospective Injunctive Relief

"Standing is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "'Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.'" *Davis* 824 F.3d at 346 (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).[18]

---

[17] As noted above, Plaintiff's Amended Complaint asserted a § 1983 claim against the Pennsylvania State Police, Defendants Blocker, Morris, Devlin, and John Doe Troopers 1-10 in their official capacities. However, Plaintiff has voluntarily dismissed her claims against the Pennsylvania State Police (*see* ECF No. 53 at fn. 1) and her claims against Defendants Morris and Delvin in their official capacities (*see id.* at fn. 4.) The Court infers that Plaintiff also withdrew her claim against John Doe Officers 1-10 in their official capacities. Accordingly, the only official capacity claim remaining is the claim against Col. Blocker.

[18] "As the Third Circuit has stated, "[i]t is axiomatic that in order to invoke the powers of a federal court, the plaintiff must 'show an injury to himself that is likely to be redressed by a favorable decision,'" for "'[a]bsent such a showing exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation.'" *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)).

Perplexingly, neither party discussed the issue of standing in their briefs. However, the Court is compelled to address this jurisdictional issue *sua sponte;* under the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

As the Third Circuit recently noted,

> The Supreme Court's well-known standing test sets forth an "irreducible constitutional minimum" of three elements that a plaintiff must satisfy: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court[,]" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

*Manuel v. NRA Grp. LLC,* No. 17-1124, 2018 WL 388622, at *3 (3d Cir. Jan. 12, 2018).

"In order to obtain standing for prospective relief, the plaintiff must establish a real and immediate threat that he would again be the victim of the allegedly unconstitutional practice." *Chavis v. United States,* 597 F. App'x 38, 42 (3d Cir. 2014) (citing *Brown v. Fauver,* 819 F.2d 395, 400 (3d Cir. 1987)); *see Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Heinzl v. Boston Mkt. Corp.,* No. CIV.A. 14-997, 2014 WL 5803144, at *4 (W.D. Pa. Nov. 7, 2014) (holding that "[p]laintiffs seeking prospective injunctive relief must demonstrate a 'real and immediate threat' of injury in order to satisfy the 'injury in fact' requirement of standing) (internal citations omitted); *Heinzl v. Quality Foods Corp.,* No. CIV.A. 14-1010, 2014 WL 6453894, at *5 (W.D. Pa. Nov. 17, 2014) (same).

"[T]he fact of past injury, 'while presumably affording [the plaintiff] standing to claim damages . . . does nothing to establish a real and immediate threat that he would again' suffer similar injury in the future." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210–11, 115 S. Ct. 2097, 2104, 132 L. Ed. 2d 158 (1995) (internal citations omitted); *see Brown*, 819 F.2d at 400 (explaining that "[w]hile a § 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief") (internal citations omitted)); *Shoffner v. Wenerowicz*, No. CIV.A. 15-00392, 2015 WL 4199075, at *4 (E.D. Pa. July 13, 2015) (if plaintiffs' "constitutional rights were violated in the past . . . [plaintiffs may have] standing to recover damages [but] it does not give them standing to seek prospective injunctive relief.")

While Plaintiff has stated a claim for her alleged constitutional violations she has failed to allege facts indicating that she faces a "real and immediate" threat of suffering injuries in the future. In fact, Plaintiff does not even allege that she will suffer similar constitutional deprivations in the future. (*See, generally,* ECF No. 27.) Rather, Plaintiff suggests that *other citizens* may suffer similar injuries as those she suffered if the Pennsylvania State Police are not enjoined from assisting in future civil repossessions. (*Id.* at ¶ 111(a).) These allegations are insufficient to satisfy standing's "injury in fact" requirement.

Accordingly, Plaintiff does not have standing to assert her official capacity claim against Col. Blocker. Therefore, the Court will dismiss Plaintiff's official capacity claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

## 2. The Court Will Deny Plaintiff Leave to Amend

"[I]f a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such amendment would be inequitable or futile."[19] *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)). Amendment would be futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Munchak v. Ruckno*, 692 F. App'x 100, 112 (3d Cir. 2017) (internal citations omitted).

The Court finds that further amendment would be futile. While Plaintiff may have suffered constitutional injuries due to the repossession of her car, the Amended Complaint does not provide any basis for believing that Plaintiff faces a "real and immediate" threat of similar injury in the future. Given the discrete nature of the constitutional violations that Plaintiff alleges, Plaintiff's claim for prospective injunctive relief would not survive a motion to dismiss even if Plaintiff were given leave to amend. Therefore, the Court will deny Plaintiff leave to amend.

## VI. Conclusion

The Court will deny Capital One and Commonwealth Recovery's motion to dismiss Count III (conversion/trespass to chattels), Count IV (trespass), and punitive damages. The Court will deny the Commonwealth Defendants' motion to dismiss Plaintiff's § 1983 claim against Defendants Devlin and Morris in their individual capacities (Count VI). The Court will grant the Commonwealth Defendants' motion to dismiss Plaintiff's § 1983 claim against Defendant Col.

---

[19] Likewise, Federal Rule of Civil Procedure 15 embodies a liberal approach to amendment and directs that "leave shall be freely given when justice so requires" unless other factors weigh against such relief. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990).

Blocker in his official capacity because Plaintiff does not have standing to seek prospective injunctive relief.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANGELA HYMAN,                        )        CIVIL ACTION NO. 3:17-89
                                     )
                                     )        JUDGE KIM R. GIBSON
              Plaintiff,             )
                                     )
      v.                             )
                                     )
CAPITAL ONE AUTO FINANCE,            )
COMMONWEALTH RECOVERY                )
GROUP, INC., PENNSYLVANIA STATE      )
POLICE, COL. TYREE C. BLOCKER,       )
MICHAEL MORRIS, BRYAN DEVLIN,        )
JOHN DOE TROOPERS 1-10,              )
                                     )
              Defendants.            )

## ORDER

**AND NOW**, this 23rd day of January, 2018, upon consideration of Capital One and Commonwealth Recovery's motion to dismiss (ECF No. 41) and the Commonwealth Defendants' motion to dismiss (ECF No. 39), and in accordance with the accompanying memorandum opinion, **IT IS HEREBY ORDERED** as follows:

1. Capital One and Commonwealth Recovery's motion to dismiss (ECF No. 41) is **DENIED.**

2. The Commonwealth Defendants' motion to dismiss (ECF No. 39) is **GRANTED IN PART and DENIED IN PART** as follows:

    a. The Commonwealth Defendants' motion to dismiss is **GRANTED** with respect to Count V, which is **DISMISSED WITH PREJUDICE;**

    b. The Commonwealth Defendants' motion to dismiss is **DENIED** with respect to Count VI.

3. In addition, the following claims are **DISMISSED WITH PREJUDICE:**

a. All claims against the Pennsylvania State Police;

b. Plaintiff's § 1983 claims against Col. Blocker and John Doe Troopers 1-10 in their individual capacities.

4. Accordingly, the Pennsylvania State Police, Col. Blocker, and John Doe Troopers 1-10 are dismissed as defendants.

BY THE COURT:

**KIM R. GIBSON**

**UNITED STATES DISTRICT JUDGE**