IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANGELA HYMAN, | ) | CIVIL ACTION NO. 3:17-89 |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MICHAEL MORRIS and BRYAN | ) | |
| DEVLIN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is the Motion for Summary Judgment (ECF No. 91) filed by

Defendant Bryan Devlin ("Devlin"), the sole remaining defendant in this case.[1] The Motion has

been fully briefed (*see* ECF Nos. 92 and 95) and is ripe for disposition. For the reasons stated

below, the Court will **DENY** Devlin's Motion.

### II. Background

#### A. Factual History[2]

##### 1. Angela Hyman Defaults on Her Loan

---

[1] "Plaintiff no longer pursues her claim against [Defendant] Trooper Michael Morris." (Plaintiff's Brief, ECF No. 95 at 3, fn. 3.)

[2] The Court derives the facts contained in this section from Devlin's Concise Statement of Material Facts (ECF No. 93), Plaintiff Angela Hyman's Responsive Concise Statement of Material Facts (ECF No. 96), and Devlin's Response to "New Matter" Set Forth in Plaintiff's Concise Statement of Material Facts (ECF No. 98). These facts are undisputed unless otherwise indicated.

Plaintiff Angela Hyman ("Hyman") received a loan to finance the purchase of a new car.[3] Hyman gave the lender, Capital One, a security interest in her car.[4] The loan agreement gave Capital One the right to repossess Hyman's car if she defaulted on her loan payments.[5]

Hyman fell behind on her monthly payments.[6] Capital One sent Hyman a notice of default and advised her that if she failed to pay the amount due, it might repossess her car.[7] Hyman submitted a loan modification request, which Capital One denied,[8] instead deciding to exercise its right to repossess Hyman's car.[9]

Capital One hired Jeff Brunner of Commonwealth Recovery Group to carry out the repossession.[10]

### 2. Brunner Arrives to Repossess Hyman's Vehicle

Brunner arrived at Hyman's home on October 5, 2016, around 7:20 p.m.[11] While the parties agree that Brunner ultimately repossessed Hyman's car, they disagree about when the repossession occurred. Devlin states that Brunner immediately backed his tow truck into Hyman's driveway, hooked and strapped both sides of Hyman's car, and lifted the vehicle into the air without incident.[12] By contrast, Hyman and her wife, Shyree Johnson, unequivocally assert that Brunner did not hook and lift her car until after the police arrived.[13]

---

[3] ECF No. 93 at ¶ 1; ECF No. 96 at ¶ 1.
[4] ECF No. 93 at ¶ 2; ECF No. 96 at ¶ 2.
[5] ECF No. 93 at ¶ 3; ECF No. 96 at ¶ 3.
[6] ECF No. 93 at ¶ 4; ECF No. 96 at ¶ 4.
[7] ECF No. 93 at ¶¶ 7, 9; ECF No. 96 at ¶¶ 7, 9.
[8] ECF No. 93 at ¶¶ 10, 12; ECF No. 96 at ¶¶ 10, 12.
[9] ECF No. 93 at ¶ 16; ECF No. 96 at ¶ 16.
[10] ECF No. 93 at ¶ 17; ECF No. 96 at ¶ 17.
[11] ECF No. 93 at ¶ 20; ECF No. 96 at ¶ 20.
[12] ECF No. 93 at ¶¶ 21-27.
[13] ECF No. 96 at ¶¶ 22-23.

Johnson exited the house and requested to remove items from the vehicle. [14] Brunner helped her remove her items.[15] Johnson brought the items inside the house and, shortly thereafter, returned to the vehicle, got into the driver's seat, and refused to exit.[16] After Johnson entered the vehicle, the vehicle's doors were locked, though the parties dispute whether Johnson locked the doors from the inside or whether Hyman locked them remotely.[17] The parties also dispute whether the car was attached to Brunner's tow truck at this juncture; Devlin, citing Brunner's testimony, claims that Hyman's car was hooked up and raised in the air, while Hyman, citing her own testimony and that of Johnson, contends that the car was not attached to the tow truck and was still on the ground.[18]

At this point, Hyman called her daughter, a law student, and asked her for advice about how to handle the situation.[19] Hyman claims that, on the advice of her daughter, she approached Brunner, informed him that he was trespassing, and demanded that he vacate her property.[20] Brunner denies that Hyman or Johnson told him he was trespassing or demanded that he get off the property.[21]

---

[14] ECF No. 93 at ¶¶ 28-29; ECF No. 96 at ¶¶ 28-29.

[15] ECF No. 93 at ¶¶ 28-29; ECF No. 96 at ¶¶ 28-29.

[16] ECF No. 93 at ¶¶ 30-32; ECF No. 96 at ¶¶ 30-32.

[17] ECF No. 93 at ¶ 32; ECF No. 96 at ¶ 32.

[18] ECF No. 96 at ¶¶ 33-34.

[19] ECF No. 96 at ¶ 95. The Court notes that Devlin denies this assertion, claiming only that "[t]he averments set forth by Plaintiff are not supported by the reference." (ECF No. 98 at ¶ 95.) Devlin responds to a large number of the paragraphs in Hyman's "New Matter" in similar fashion. The Court reviewed the disputed portion of Hyman's testimony referenced in paragraph 95 and concludes that, contrary to Devlin's contention, it sufficiently supports the proposition for which it is cited, particularly given the legal standard governing motions for summary judgment. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)) (holding that when deciding a motion for summary judgment, "'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'").

[20] ECF No. 96 at ¶ 98.

[21] ECF No. 98 at ¶¶ 98-99.

3

At this point, Brunner called the Pennsylvania State Police.[22] Hyman also called the police, and reported that someone was trying to take her car.[23] Hyman claims that, while everyone was waiting for the police to arrive, she told Brunner to leave her property two more times.[24] Brunner denies that Hyman ever ordered him to leave.[25] During this interval, Hyman stood in the doorway to her house and Johnson remained inside Hyman's vehicle.[26]

### 3. The State Police Arrive

After approximately twenty minutes, Trooper Brian Black arrived.[27] Black spoke with Brunner, who provided documentation of the repossession, and with Johnson, who refused to exit the vehicle.[28] Black then approached Hyman and requested that she ask Johnson to exit the vehicle so he could talk to her.[29] Hyman told Black that Johnson was her wife[30] and refused to ask her to exit the car.[31] Black returned to his cruiser and contacted Corporal Brian Devlin.[32] Black waited in his cruiser for Devlin to arrive.[33]

---

[22] ECF No. 93 at ¶ 35; ECF No. 96 at ¶ 35.
[23] ECF No. 96 at ¶¶ 102-104; ECF No. 98 at ¶¶ 103-104.
[24] ECF No. 96 at ¶ 106.
[25] ECF No. 98 at ¶ 106.
[26] ECF No. 93 at ¶¶ 37, 41; ECF No. 96 at ¶¶ 37, 41.
[27] ECF No. 93 at ¶¶ 37-38; ECF No. 96 at ¶¶ 37-38.
[28] ECF No. 93 at ¶ 41; ECF No. 96 at ¶ 41.
[29] ECF No. 93 at ¶ 46; ECF No. 96 at ¶ 46.
[30] ECF No. 96 at ¶ 112; ECF No. 98 at ¶ 112.
[31] ECF No. 93 at ¶ 46; ECF No. 96 at ¶ 46.
[32] ECF No. 93 at ¶¶ 46-47; ECF No. 96 at ¶¶ 46-47.
[33] ECF No. 93 at ¶ 47; ECF No. 96 at ¶ 47.

Trooper Michael Morris arrived at the scene to assist Black.[34] Morris attempted to speak with Johnson, but she did not respond.[35] Morris then abandoned his efforts to speak with Johnson and waited for Devlin to arrive.[36]

### 4. Corporal Devlin Intervenes

Devlin arrived with Trooper Elmer Hertzog.[37] After arriving, Devlin "was briefed on the situation" and then attempted to speak to Hyman who handed Devlin a cellphone.[38] Devlin spoke briefly to the person on the phone, an unknown woman who claimed to be an attorney or a law student.[39] Devlin then approached the vehicle and spoke with Johnson, who was still inside.[40]

The parties dispute whether Devlin knew that Johnson was Hyman's wife and whether he understood that he was at the scene of a repossession. Black testified that, when he called the barracks and spoke with Devlin, he informed Devlin that he was at "the scene of a repo" and that the woman in the car was the owner of the vehicle.[41] By contrast, Devlin testified that he believed he was responding "to a scene of [a] disturbance, of an unknown lady locked inside a car."[42] The parties also disagree about whether the car was already hooked up to the tow truck when Devlin arrived.[43]

---

[34] ECF No. 93 at ¶ 48; ECF No. 96 at ¶ 48.

[35] ECF No. 93 at ¶ 53; ECF No. 96 at ¶ 53.

[36] ECF No. 93 at ¶ 54; ECF No. 96 at ¶ 54.

[37] ECF No. 93 at ¶¶ 55-56; ECF No. 96 at ¶¶ 55-56.

[38] ECF No. 93 at ¶ 61; ECF No. 96 at ¶ 61.

[39] ECF No. 93 at ¶ 62; ECF No. 96 at ¶ 62.

[40] ECF No. 93 at ¶ 62; ECF No. 96 at ¶ 62.

[41] Deposition of Brian Black, ECF No. 97-5 at 30:12-31:02.

[42] Deposition of Bryan Devlin, ECF No. 94-15 at 53:12-13.

[43] See ECF No. 93 at ¶ 63; ECF No. 96 at ¶ 63.

5

Devlin approached the car, still speaking to the woman on the phone.[44] Cell phone video captures the interaction that ensued.[45] The Court notes that while Devlin was speaking on the phone to Hyman's daughter, the conversation was clearly audible to Johnson — whose cell phone video, taken from inside the car, recorded the conversation.[46] What is produced below is not an official transcription, but rather the Court's impression of what occurred based on its viewing of the cell phone video.

The woman on the phone informs Devlin that police may not enforce a civil contract or take sides in civil disputes.[47] Devlin responds, "[m]a'am, what's going to happen here today is that I've already spoken with the tower, they need to get the vehicle tonight, okay? If you're talking with the young lady in the car . . . would please tell her to get out so these gentlemen can do their job?"[48]

The woman reiterates that the police may not assist in a civil repossession.[49] Devlin replies, "you can file a complaint on me later."[50] He continues, "[h]ere's what's going to happen. If she doesn't get out, we're going to break the window . . . she's going to be removed, she's going to be arrested for disorderly conduct, and the car is still going to get taken."[51] After the woman on the phone reiterates that Devlin is breaking the law, Devlin repeats that she can file a complaint against him.[52]

---

[44] ECF No. 93 at ¶ 64; ECF No. 96 at ¶ 64.
[45] *See* ECF No. 94-16.
[46] *See id.*
[47] *Id.* at 0:25.
[48] *See id.* at 0:45-1:05.
[49] *Id.*
[50] *Id.* at 0:58-1:00.
[51] *Id.* at 1:15-1:25.
[52] *Id.* at 1:55.

6

Devlin asks the woman on the phone if she has told Johnson to get out of the car yet.[53] The woman responds that she has not spoken with Johnson but that Johnson will comply with Devlin's order.[54] Devlin tells the woman, "[y]ou call her, tell her to do that, and once she gets out, we'll be okay."[55]

After a few seconds, Devlin taps the window of the car and tells Johnson, "I'm not going to wait all day . . . you've got about 30 more seconds." Johnson responds, "[m]y lawyer's on the phone with the State Police." Devlin replies, "[y]ou've got 30 seconds to come out or we're breaking the window and coming in. How long have we been here dealing with this? . . . If you refuse to come out, we're going to have to remove you, and I do not want to have to do that over a repossessed vehicle."[56]

After Johnson failed to obey Devlin's order, Devlin taps on the window again and asks, "are you coming out? Your time is up . . . yes or no? Are you coming out?" At this point, Johnson complies with Devlin's order and exits the vehicle.

Devlin spent approximately 18 minutes at Hyman's residence.[57] Devlin admits that he "did not witness any violence, property destruction, or threats."[58]

Devlin and the other officers left Hyman's residence shortly after Johnson exited the vehicle.[59] Hyman testified that, after Johnson vacated the car, Brenner attached the car to the tow

---

[53] *Id.* at 2:07-2:10.

[54] *Id.* at 2:10-2:17.

[55] *Id.* at 2:20-2:27.

[56] *Id.* at 3:10-3:26.

[57] ECF No. 93 at ¶ 68; ECF No. 96 at ¶ 68.

[58] ECF No. 93 at ¶ 129.

[59] ECF No. 93 at ¶ 71; ECF No. 96 at ¶ 71.

truck, lifted it up from the rear end, and towed the car away.[60] Devlin disputes this account and states that Hyman's car had been hooked up before the police arrived at the scene.[61]

Devlin and the other officers present at Hyman's residence "are well aware" that "law enforcement cannot involve themselves (sic) in a civil repossession."[62]

## B. Procedural History

Hyman filed her Complaint before this Court on May 30, 2017 (*see* ECF No. 1), followed by an Amended Complaint on August 4, 2017 (*see* ECF No. 27). Hyman asserted six counts in her Amended Complaint.[63]

Capital One and Commonwealth Recovery moved for partial dismissal of Hyman's claims against them.[64] (ECF No. 41.) The Commonwealth Defendants moved to dismiss Hyman's § 1983 claims, which alleged that they had violated her Fourth Amendment right against unreasonable seizure and her Fourteenth Amendment right to procedural due process. (ECF No. 39.)

---

[60] *See* Deposition of Angela Hyman, ECF No. 9702 at 80:21-81:10.

[61] ECF No. 98 at ¶ 127.

[62] ECF No. 96 at ¶ 153; ECF No. 98 at ¶ 153.

[63] Specifically, Hyman asserted: (1) a Fair Debt Collection Practices Act Claim against Commonwealth Recovery (id. at ¶¶ 83-87); (2) a claim under the Pennsylvania Uniform Commercial Code against Capital One (id. at ¶¶ 88-91); (3) a conversion/trespass to chattels claim against Capital One and Commonwealth Recovery (id. at ¶¶ 92-96); (4) a trespass claim against Capital One and Commonwealth Recovery (id. at ¶¶ 97-100); (5) a 42 U.S.C. § 1983 claim against the Pennsylvania State Police, Defendants Blocker, Morris, Devlin, and John Doe Troopers 1-10 in their official capacities (id. at ¶¶ 101-111); and (6) a 42 U.S.C. § 1983 claim against the Pennsylvania State Police, Defendants Blocker, Morris, Devlin, and John Doe Troopers 1-10 in their individual capacities (id. at ¶¶ 111-119). Additionally, Hyman sought punitive damages against Capital One and Commonwealth Recovery for her conversion/trespass to chattels (Count III) and trespass (Count IV) claims.

[64] Capital One and Commonwealth Recovery did not ask this Court to dismiss Plaintiff's Fair Debt Collection Practices Act Claim (Count I) or her claim under the Pennsylvania Uniform Commercial Code (Count II).

8

The Court disposed of these motions via memorandum opinion and order. (ECF No. 59.) The Court denied Capital One and Commonwealth Recovery's Motion to Dismiss in its entirety. (*Id.*) The court granted in part and denied in part the Commonwealth Defendants' Motion to Dismiss. (*Id.*) Specifically, the Court granted the Motion with respect to Hyman's official capacity claims and all claims against the Pennsylvania State Police, Blocker, and John Doe Troopers 1-10 in their individual capacities. Accordingly, the only remaining claims against any of the Commonwealth Defendants were the § 1983 claims against Defendants Morris and Devlin in their individual capacities.

Subsequently, Hyman accepted Capital One and Commonwealth Recovery's Offer of Judgment (ECF No. 82). The clerk entered judgment against these Defendants (ECF No. 84), and they were dismissed from the case.

The remaining Defendants—Morris and Devlin—filed the pending Motion for Summary Judgment on the remaining § 1983 claims. (ECF No. 91.) In her Response Brief, Hyman states that she "no longer pursues her claim against Trooper Michael Morris."[65] Therefore, the only remaining claim is Hyman's § 1983 claim against Devlin in his individual capacity for violating Hyman's Fourth and Fourteenth Amendment rights.

## III.  Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh,* 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d

---

[65] ECF No. 95 at 3, fn. 3.

Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just

bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue")

(internal quotation marks omitted).

## IV. Discussion

### A. Introduction to the Fourth and Fourteenth Amendment

Hyman asserts her constitutional claims against Defendant Devlin under 42 U.S.C. § 1983,

which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (U.S. 1988)

(internal citations omitted); *Reihner v. Cty. of Washington, Pennsylvania*, 672 F. App'x 142, 144 (3d

Cir. 2016) (same). Hyman alleges that Devlin violated her Fourth Amendment right against

unreasonable seizure and her Fourteenth Amendment right to procedural due process by

assisting in the repossession of her vehicle.

This Court articulated the standards for stating claims under the Fourth and Fourteenth

Amendments in its previous memorandum opinion in this case:

11

"The Fourth Amendment, made applicable to the States by the Fourteenth, *Ker v. California*, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963), provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .'" *Soldal v. Cook Cty., Ill*, 506 U.S. 56, 61, 113 S.Ct. 538, 543, 121 L.Ed. 2d 450 (1992). "In order to establish a claim under the Fourth Amendment, plaintiff must show that the actions of the defendant: (1) constituted a 'search' or 'seizure;' and (2) were unreasonable in light of the circumstances." *Brown v. City of Philadelphia*, No. 10–CV–2687, 2012 WL 1758172, at *3 (E.D. Pa. May 16, 2012). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal*, 506 U.S. at 61, 113 S.Ct. at 543 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). "When analyzing whether such an interference occurred, it is of no import that the officers did not take custody of plaintiff's property as long as the officers participated in the seizure." *Brown*, 2012 WL 1758172, at *3 (citing *Gale v. Storti*, 608 F.Supp.2d 629, 634 (E.D. Pa. 2009)).

"The [F]ourteenth [A]mendment prohibits state deprivations of life, liberty, or property without due process of law." *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984). As the Third Circuit has repeatedly noted, "the core of procedural due process jurisprudence is the right to advance notice . . . and to a meaningful opportunity to be heard." *Mir v. Behnke*, 680 Fed. Appx. 126, 129–30 (3d Cir. 2017) (citing *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (internal quotation marks omitted)). The Third Circuit has explained that "[i]t is elementary that procedural due process is implicated only where someone has claimed that there has been a taking or deprivation of a legally protected liberty or property interest." *Abbott*, 164 F.3d at 146 (citing *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Of particular importance here, it is "well established that possessory interests in property invoke procedural due process protections." *Abbott*, 164 F.3d at 146 (citing *Fuentes v. Shevin*, 407 U.S. 67, 87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).

*Hyman v. Capital One Auto Fin.*, 306 F. Supp. 3d 756, 769–70 (W.D. Pa. 2018) (Gibson, J.)

## B.    A Reasonable Jury Could Conclude that Devlin Violated Hyman's Fourth and Fourteenth Amendment Rights

Devlin argues that the Court should grant his Motion for Summary Judgment for three reasons. First, Devlin contends that Hyman cannot succeed on her constitutional claims because she lacked a cognizable property interest in her vehicle. (ECF No. 92 at 4-5.) Second, Devlin argues

that Hyman failed to present evidence that Devlin acted under the color of state law. Third, Devlin asserts that even if he did act under the color of state law, he is entitled to qualified immunity. The Court will examine these arguments in turn.

### 1.     Hyman Retained a Sufficient Possessory Interest in Her Car to Maintain Her Constitutional Claims

Devlin contends—without citing to any authority—that Hyman lacked a valid property interest in the vehicle "at the time the private company arrived to tow it" because her loan agreement gave Capital One a security interest in her car and the right to repossess her car if she defaulted on her loan. (*Id.* at 5.) In response, Hyman argues that default did not extinguish her possessory interest in her car and that therefore she can establish her constitutional claims. (ECF No. at 95-96.)

The Court finds that Hyman maintained a possessory interest after defaulting on her loan payments. As one district court in the Third Circuit stated when rejecting the same argument Devlin makes here, "[h]ad plaintiff not had an interest in the vehicle, [the creditor], by way of the tow truck operator, would not have had a need to repossess the vehicle." *Brown v. City of Philadelphia*, No. 10-CV-2687, 2012 WL 1758172, at *4 (E.D. Pa. May 16, 2012) (citing *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)) (holding that debtor who defaulted on loan payments maintained a possessory interest in her vehicle and thus could maintain due process and Fourth Amendment claims arising from allegedly unconstitutional repossession). Accordingly, the Court holds that Hyman maintained a property interest in her vehicle after default and thus may maintain her constitutional claims.

13

## 2. A Reasonable Jury Could Conclude that Devlin Acted Under State Law

Devlin argues that Hyman failed to establish that Devlin's conduct constituted state action because she failed to present evidence that Devlin actively assisted in the repossession. (ECF No. 92 at 5-10.) Devin asserts that he did not "play a principal role in the repossession" (*id.* at 10), but instead "respond[ed]to a disturbance that was already in progress" (*id.* at 9), resolved the "stalemate" that existed when he arrived (*id.* at 8), and merely kept the peace. (*Id.* at 9.) In response, Hyman claims that Devlin engaged in state action because he actively participated in the repossession by ordering Johnson out of the car and threatening to break the window, remove her, and arrest her for disorderly conduct if she failed to comply. (ECF No. 95 at 14-17.)

In the Third Circuit, the test for state action in the context of a private repossession is "whether the officer maintains neutrality or takes an active role in the repossession resulting in an unconstitutional deprivation." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609-10 (3d Cir. 2011) (citing *Abbot*, 164 F.3d at 147.) The relevant inquiry "is whether an officer affirmatively aided a repossession such that he can be said to have caused the constitutional deprivation." *Harvey*, 635 F.3d at 610 (citing *Abbot*, 164 F.3d at 147). This aid "may take the form of facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession." *Harvey*, 635 F.3d at 610 (internal citations omitted). By contrast, "[t]he mere presence of police at the scene of a private repossession does not, alone, constitute state action." *Harvey*, 635 F.3d at 610 (citing *Abbot*, 164 F.3d at 147). Rather, "liability will only attach when an officer plays a 'principal role' in the seizure." *Harvey*, 635 F.3d at 610 (citing Abbott, 164 F.3d at 147).

"The distinction between maintaining neutrality and taking an active role is not to be answered in the abstract. There is no precise formula, and the distinction lies in the particular

14

facts and circumstances of the case." *Harvey*, 635 F.3d at 610 (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)). Thus, "[t]o determine whether a police officer acted under the color of state law, the facts and circumstances of the police officer's role in the private repossession must be examined in their totality." *Harvey*, 635 F.3d at 610 (citing *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir.1983)).

The Court holds that a reasonable jury could conclude that Devlin acted under the color of state law. Hyman presented evidence that, when viewed in the light most favorable to Hyman, would enable a jury to find that Devlin affirmatively aided the repossession. Hyman came forward with a cell phone video that shows Devlin ordering Johnson out of the vehicle and threatening to break the window, pull Johnson out of the car, and arrest her for disorderly conduct if she fails to allow the repossession to occur.[66] Viewing these facts in the light most favorable to Hyman and drawing all reasonable inferences in her favor, a jury could conclude that Devlin actively participated in the repossession of Hyman's vehicle.

The Court rejects Devlin's contention that he did not assist in the repossession because Hyman's vehicle was already "repossessed" when he arrived. (ECF No. 92 at 8.) Devlin and Hyman have presented conflicting evidence about whether the car was already hooked to the tow truck when Devlin ordered Johnson to exit.[67] Hyman testified that the tow truck did not secure her car until after Johnson succumbed to Devlin's demands and vacated the vehicle.[68] Because this case comes before the Court at the summary judgment stage, the Court must view

---

[66] *See* ECF No. 94-16 at 1:15-1:25.
[67] *Compare* ECF No. 93 at ¶ 63 and ECF No. 96 at ¶ 63.
[68] *See* ECF No. 96 at ¶¶ 33-34; Testimony of Angela Hyman, ECF No. 97-2 at 80:23-81:18.

the facts in the light most favorable to Hyman. Thus, for the purposes of this opinion, the Court must assume that the tow truck did not attach Hyman's car until after Johnson existed.

The only case that Devlin cites to support his argument that he did not affirmatively aid in the repossession of Hyman's vehicle is inapposite. In *Sherry v. Assocs. Commercial Corp.*, 60 F. Supp. 2d 470 (W.D. Pa. 1998), the district court held that the officers did not affirmatively aid in a private repossession. In *Sherry*, the officers stood at a distance away from repossession, out of earshot of the dispute between the debtor and the tow truck sent by the creditor, and only approached the feuding men after "tempers flared." *Id.* Once the policemen approached the confrontation, the debtor brandished an "illegible facsimile of a document" and asked the policemen, "[y]ou are going to let them take these trucks on this kind of paperwork?" *Id.* The officer responded, "[y]es. They have a repo order. . . You have to let them have the trucks." *Id.* Despite these statements, the district court determined that, given the totality of the circumstances, the officers merely "preserve[d] the peace" and did not "take sides." *Id.* Accordingly, the district court held that the officers did not affirmatively assist in the repossession.

This case is clearly distinguishable from *Sherry*. Unlike the plaintiff in *Sherry*, Hyman has presented sufficient evidence to allow a jury to conclude that Devlin affirmatively aided in the repossession. Hyman has presented video evidence that Devlin approached Johnson, who was not engaged in a confrontation with the tow truck operator but rather sitting alone in Hyman's car, ordered her out of the vehicle, and threatened to break the window, forcibly remove her, and

16

arrest her if she did not obey his order.[69] Devlin's degree of affirmative action far surpassed that

of the officers in *Sherry*—unlike the officers in *Sherry*, Devlin threatened to use physical force to

remove Johnson from the vehicle and threatened to arrest her if she failed to comply. Therefore,

Devlin's analogy to *Sherry* fails.[70]

### C.    Qualified Immunity Does Not Shield Devlin

This Court articulated the standard for qualified immunity in its prior memorandum

opinion in this case. As the Court stated,

> "The doctrine of qualified immunity protects government officials 'from liability
> for civil damages insofar as their conduct does not violate clearly established
> statutory or constitutional rights of which a reasonable person would have
> known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed. 2d 565
> (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d
> 396 (1982)). The Supreme Court has explained that "[q]ualified immunity balances
> two important interests—the need to hold public officials accountable when they
> exercise power irresponsibly and the need to shield officials from harassment,
> distraction, and liability when they perform their duties reasonably." *Pearson*, 555
> U.S. at 231, 129 S.Ct. at 815.

> "To resolve a claim of qualified immunity, courts engage in a two-pronged
> inquiry: (1) whether the plaintiff sufficiently alleged the violation of a
> constitutional right, and (2) whether the right was 'clearly established' at the time
> of the official's conduct." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 241 (3d Cir.
> 2016) (citing *Pearson*, 555 U.S. at 232, 129 S.Ct. 808).

*Hyman*, 306 F. Supp. 3d at 771-72.

---

[69] *See* ECF No. 94-16 at 1:15-1:25.

[70] The Court also notes that *Sherry* appears to have applied a more defendant-friendly standard for state
action than the standard that the Third Circuit currently applies. In *Sherry*, decided in 1998, the district
court applied a "significant aid" test for state action. *Sherry*, 60 F. Supp. 2d at 475. Today, the Third Circuit
applies an "affirmative aid" test. *Harvey*, 635 F.3d at 610 (stating that "[t]he relevant inquiry, then, is
whether an officer affirmatively aided a repossession such that he can be said to have caused the
constitutional deprivation.") Accordingly, to the extent that *Sherry* applied a different test for state action,
that test was superseded by subsequent Third Circuit case law.

1. **Hyman Presented Sufficient Evidence to Allow a Reasonable Jury to Find that Devlin Violated Her Fourth and Fourteenth Amendment Rights (Prong 1)**

Hyman presented sufficient evidence to allow a jury to conclude that Devlin violated her Fourth Amendment right to be free from unreasonable searches and seizures. Viewing the facts in the light most favorable to Hyman, a jury could conclude that Devlin's actions constituted a "seizure" because Devlin meaningfully interfered with Hyman's possessory interest in her car. The fact that the officers did not physically take custody of Hyman's car is irrelevant, as Hyman presented evidence that Devlin affirmatively participated in the seizure. *See Brown,* 2012 WL 1758172, at *3. Furthermore, a reasonable jury could find that this interference was unreasonable. *See Soldal,* 506 U.S. at 61. Accordingly, Hyman has sufficiently established her Fourth Amendment claim for purposes of summary judgment.

Hyman also presented sufficient evidence to allow a jury to conclude that Devlin violated her Fourteenth Amendment right to due process. A jury could find that Devlin actively participated in the repossession without providing Hyman with notice or a meaningful opportunity to be heard. *See Mir v. Behnke,* 680 Fed. Appx. at 129-30; *Abbott,* 164 F.3d at 147 (holding that a constable who assisted in a repossession "was obligated to notify [the debtor] of the seizure in advance and to provide him with a meaningful opportunity to be heard.") Therefore, Hyman has sufficiently established her Fourteenth Amendment claim for the purposes of summary judgment.

2.    **In October 2016, It Was Clearly Established that Law Enforcement Officers Assisting in a Private Repossession Could Constitute State Action (Prong 2)**

In this Court's earlier opinion in this case, the Court articulated the applicable standard for ascertaining whether a right was "clearly established" for the purposes of evaluating qualified immunity:

> "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 2083, 179 L.Ed. 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016), as amended (Mar. 21, 2016), cert. denied, —— U.S. ——, 137 S.Ct. 161, 196 L.Ed. 2d 121 (2016) (same). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Mammaro*, 814 F.3d at 169 (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)) (internal quotation marks omitted).

> "In conducting the inquiry into whether a right is clearly established, we look first for 'applicable Supreme Court precedent.'" *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (quoting *Mammaro*, 814 F.3d at 169). If no applicable Supreme Court authority exists, courts "consider whether there is a case of controlling authority in [their] jurisdiction or a 'robust consensus of cases of persuasive authority' in the Courts of Appeals [that] could clearly establish a right for purposes of qualified immunity." *Barna*, 877 F.3d at 142 (quoting *Mammaro*, 814 F.3d at 169). As the Third Circuit has explained, "[t]he authority need not be 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Barna*, 877 F.3d at 142 (quoting *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074).

> In *Harvey*, published in 2011, the Third Circuit held that "in the context of private repossessions," the test for whether a police officer acts under the color of state law "is whether the officer maintains neutrality or [instead] takes an active role in the repossession resulting in an unconstitutional deprivation." *Harvey*, 635 F.3d at 609–10 (noting that "the relevant inquiry . . . is whether an officer affirmatively aided a repossession such that he can be said to have caused the constitutional deprivation," and explaining that "[s]uch aid may take the form of facilitation, encouragement, direction, compulsion, or other affirmative assistance

in the repossession"); *see also Mitchell v. Gieda*, 215 Fed. Appx. 163, 165 (3d Cir. 2007) (discussing that an officer's presence at a private repossession may constitute state action if "accompanied by affirmative intervention, aid, intimidation, or other use of power which converts him from a neutral third party to, in effect, an assistant of the repossessing party.")

*Hyman*, 306 F. Supp. 3d at 772-73.

The Court also noted that:

[O]ther Courts of Appeals apply the same test as applied by the Third Circuit, indicating a "robust consensus of cases of persuasive authority" on the issue of police involvement in private repossessions. *See, e.g., Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004) ("officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor."); *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (state action exists "when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to 'stand by in case of trouble' is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action."); *Hensley v. Gassman*, 693 F.3d 681, 689 (6th Cir. 2012) (noting that "the likelihood that state action will be found increases when officers take a more active role in the repossession" because "[a]t some point, as police involvement becomes increasingly important, repossession by private individuals assumes the character of state action."); *Barrett v. Harzoood*, 189 F.3d 297, 302 (2d Cir. 1999) (stating that "[w]hen an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action").

*Hyman*, 306 F. Supp. 3d at 773, fn. 16.

The Court holds that, viewed in the light most favorable to Hyman, Devlin's conduct violated clearly established law of which a reasonable officer should have known. In October, 2016, it was clearly established in the Third Circuit that a police officer violates the Fourth and Fourteenth Amendments when he affirmatively aids in a private repossession. *See Harvey*, 635 F.3d at 609–10 (holding that when evaluating a Fourth Amendment claim arising from a

repossession, "the test is whether the officer maintains neutrality or takes an active role in the repossession resulting in the unconstitutional deprivation."); *Abbott*, 164 F.3d at 147 (holding that a reasonable jury could conclude that police officer violated the Fourteenth Amendment when he actively participated in private repossession.) Therefore, the Court will deny Devlin's claim of qualified immunity.

In *Abbott*, a case with similar facts, the Third Circuit reversed the district court's grant of qualified immunity to a defendant police officer. The police officer had arrived at the scene of a private repossession, advised the party seeking repossession that she had a right to immediate possession of the vehicle, and threatened to arrest the attorney of the party in possession of the vehicle if he did not move his car to allow the repossession to occur. *Id*. at 164 F.3d at 147. In reversing the judgment of the district court, the Third Circuit declared that "[r]easonable police officers should know from the established precedent of *Fuentes* that their role is not to be participants in property deprivations without notice and an opportunity to be heard." *Id*. at 149. The Third Circuit observed that "[t]here came a point during this incident [that the police officer's] role changed from the protector of the peace to the enforcer," and held that "a reasonable officer . . . would have known that such behavior crossed the line of permissible conduct." *Id*. at 149.

The cases that Devlin cites to support his claim of qualified immunity fail to persuade this Court. In *Moore v. Carpenter*, 404 F.3d 1043 (8th Cir. 2005), the Eighth Circuit affirmed the district court's holding that the officers "were not so involved in aiding the repossession that the deprivation of the boat is state action." *Id*. at 1046. But "[t]he officers did not tell the [party in possession of the boat] the repossession was legal or that they would be arrested if they

interfered." *Id.* Here, Devlin told Johnson that Brunner "need[s] to get the vehicle tonight"[71] and threatened to break a window, forcibly remove Johnson, and arrest her if she did not vacate the vehicle.[72] Because Devlin unquestionably played a larger role in the repossession than the officers in *Moore*, *Moore* does not apply here.

The Court is similarly unpersuaded by Devlin's citation to *Goard v. Crown Auto, Inc.*, No. 6:15-CV-00035, 2017 WL 2423521, at *4 (W.D. Va. June 2, 2017). In *Goard*, the district court granted qualified immunity to a policer officer who acted in an arguably neutral role and whose actions were "not overtly supportive of the repossession." *Id.* at 8. But the district court simultaneously *denied* qualified immunity to a second officer who threatened to arrest the plaintiff if she did not consent to the repossession. *Id.* at 10. The Court rejects Devlin's assertion that his actions more closely mirrored those of the first officer in *Goard* than the second officer in *Goard*. Devlin ordered Johnson to get out of the vehicle, and threatened to break the window, forcibly remove Johnson and arrest her if she failed to comply; all of which affirmatively aided the repossession. Thus, Devlin fails to appreciate that *Goard* actually *supports* Hyman's argument that Devlin is not entitled to qualified immunity.

In sum, the Court concludes that a reasonable jury could find that Devlin violated Hyman's clearly established Fourth and Fourteenth Amendment rights of which a reasonable police officer should have known. Therefore, the Court finds that Devlin is not entitled to qualified immunity.

---

[71] ECF No. 94-16 at 0:45-1:05.
[72] *Id.* at 0:58-1:00.

**V.     Conclusion**

The Court holds that Hyman presented sufficient evidence to allow a reasonable jury to conclude that Devlin violated her Fourth and Fourteenth Amendment rights. Accordingly, the Court will deny Devlin's Motion for Summary Judgment. The Court further holds that these rights were clearly established at the time the repossession occurred and that a reasonable officer should have understood and known that affirmatively assisting in a private repossession in the manner that Hyman alleges would have violated Hyman's Fourth and Fourteenth Amendment rights. Thus, if the factual disputes were resolved in Hyman's favor, Devlin would not be entitled to qualified immunity. Therefore, the Court will deny Devlin's Motion for Summary Judgment on the issue of qualified immunity.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELA HYMAN,** | ) | **CIVIL ACTION NO. 3:17-89** |
| | ) | **JUDGE KIM R. GIBSON** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **MICHAEL MORRIS and BRYAN** | ) | |
| **DEVLIN,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

AND NOW, this _14th_ day of August, 2018, upon consideration of the Motion for

Summary Judgment (ECF No. 91), and in accordance with the accompanying memorandum

opinion, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

It is **FURTHER ORDERED** that, in accordance with Hyman's voluntary dismissal of her

claim against Michael Morris, Morris is dismissed as a Defendant.


**BY THE COURT:**


**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**