**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| ANGELA HYMAN | | : | |
| | Plaintiff | : | CIVIL ACTION |
| v. | | : | |
| | | : | No.  3:17-cv-00089-KRG |
| BRYAN DEVLIN, | | : | |
| | Defendant | : | |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND COSTS**

**I.     INTRODUCTION**

Defendant Bryan Devlin has filed a belated opposition to Angela Hyman's application for fees and costs.  (ECF 154).  Defendant raises no record facts to challenge the fee request and each argument Defendant makes is flawed.  For the reasons set forth in Plaintiff's opening brief (ECF 146) and in this short Reply, the motion for fees and costs should be granted.

**II.     ARGUMENT IN REPLY**

**A.  Defendant's Opposition is Untimely**

Plaintiff filed her Motion for Attorney Fees and Costs on February 19, 2019, as required, within fourteen days of the verdict sheet being entered upon the docket.  (ECF 145).  There was no response from Defendant for over a month.  Then on March 28, 2019, the Defendant filed his belated opposition, unilaterally taking some forty days to respond.  (ECF 154).  No leave of Court was sought or granted for this belated filing, nor was "excusable neglect" raised or substantiated. *See* Fed. R. Civ. P. 6(b)(1)(B); *Drippe v. Tobelinski,* 604 F.3d 778, 785 (3d Cir. 2010) (good cause required upon formal motion for a retroactive extension to respond).  As such, the Court is well within its discretion to treat Trooper Devlin's opposition as untimely and not consider it.

**B.  EDPA Rates Should be Applied – the Record Facts Establish the Exception to the "Forum Rule," i.e. this Case was Specialized or Undesirable**

Trooper Devlin fails to introduce *any* record evidence to contradict the sworn certifications of Makiba Gaines, Kevin Persio, and Donald Driscoll, whose statements tend to show that because of the specialized nature of the case, or its perceived undesirability, Ms. Hyman had to look to a different part of the state for counsel.  As a result, the recognized exception to the forum rate rule should apply and Flitter Milz's Eastern District of Pennsylvania (EDPA) rates should be utilized. *See Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1186 (3d Cir. 1995); *Richards v. Client Servs., Inc.*, 2015 WL 5836274, at *3 (M.D. Pa. Oct. 5, 2015).

The totality of Trooper Devlin's defense against the exception can be summed up in this argument: "As the Court is well aware, there are plenty of civil rights attorneys practicing in the Western District." (Def. Br. at 8).  But, this mere (unsupported) *argument* does nothing to establish as record *fact* that any civil rights attorney in the WDPA would have taken this case.  To the contrary, even the Defendant's *own declarants*—lawyers from the prominent Pittsburgh civil rights firm The Law Office of Timothy O'Brien—attest that they would <u>not</u> have taken this case. Margaret S. Coleman, whose declarations from different cases (along with those of her partner, Mr. O'Brien) were attached to Defendant's opposition, swears *in this <u>Hyman</u> case* that:  "Due to the overlap of consumer finance law and debt collection law with section 1983 litigation, the lack of physical injuries or assault, and the significant risks involved in bringing Ms. Hyman's case, I do not believe my firm would have accepted her case."  (See Ex. "A," hereto, Declaration of Margaret S. Coleman ¶ 7).

Defendant cites to this Court's decision in *Duttry v. Clearfield Cty.*, No. 09-274, ECF 37 at p. 9 (W.D. Pa. Mar. 25, 2011) (Gibson, J.) for the general rule that the forum rate should apply. (Def. Br. at p. 9). Plaintiff does not quarrel with the general rule.  But Trooper Devlin fails to

address the well-recognized exception to the general rule where "'the special expertise of counsel from a distant district' is shown or when local counsel are unwilling to handle the case" which is articulated in those cases this Court cites in *Duttry*.  *See id.* (*citing Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200, 206 (M.D. Pa. 2003) and *PIRG of New Jersey v. Windall*, 51 F. 3d 1179, 1185-86 (3d Cir. 1995)). Unlike the instant case, there was no record showing in *Duttry* of specialization or undesirability and therefore no need for the Court to determine that a rate from a different part of the state should apply.

Contrary to Trooper Devlin's mere arguments, the declarations of Ms. Gaines,[1] Mr. Persio, Mr. Driscoll and Ms. Coleman demonstrate that Ms. Hyman sought attorneys in the WDPA, could not find one to represent her, and that the local bar (including Pittsburgh practitioners) would not be eager to take her case.  Because of this, she hired lawyers who are experts in repossession law from the Philadelphia area.  This weighty record supports that an exception to the forum rate rule should apply and Flitter Milz's EDPA rates should be utilized.

### C.  Defendant's "Comparison" Cases and Rates are No Apt Comparison

Counsel's EDPA rates should apply.  As such, Defendant's arguments about the rates granted in other WDPA civil rights cases should be moot.  However, should the Court wish to analyze the cases and declarations that Trooper Devlin cites for support, it will easily see that the facts of those cases cannot be compared to the case at bar.

Trooper Devlin cites *Kapp v. Wetzel*, No. 16-1380, for the proposition that instant counsel's rates should be adjusted downward to $600 (for Flitter) and $400 (for Milz).  (Def. br. at p. 9-10). But *Kapp* was a was a wrongful death action involving the suicide of a juvenile inmate, where pain

---

[1]     Defendant challenges the specificity of Ms. Gaines' certification, claiming she needed to identify specific law firms and practice areas.  (Def. Br. at 8).  Understandably, she does not remember the firms she called for help back in 2016-17.  In any case, Defendant fails to identify one WDPA practitioner who would have taken Ms. Hyman's case.  The one firm Defendant refers to, the O'Brien firm, would not have.  (Ex. "A," Coleman Decl. at ¶7).

and suffering damages and medical expenses were sought for the plaintiff's mother and his estate. (See Ex. "A," Coleman Decl. ¶ 5). The plaintiff accepted a Rule 68 offer of judgment against two defendants for $50,000, and a fee award of $52,500 was approved. (*See Kapp*, No. 16-1380 at ECF 58, 73). There were no comparable risks, no jury trial, no unanimous plaintiff's verdict, and the judgment was one-tenth of that entered in the case at bar.

Devlin also attaches declarations of counsel from *Williams v. Baker*, No. 15-402, a false arrest and excessive force case where the plaintiff was beaten, jailed for 17 hours, and suspended from his job. (Ex. "A," Coleman Decl. ¶ 5). In that case, the plaintiff was awarded $15,001 in compensatory damages and a total of $40,000 in punitive damages; a fee award of $195,000 was approved. (*Williams,* No. 12-551 at ECF 277, 286). The verdict here is greater, and the fee requested here is proportionately far less.

Finally, Defendant attaches declarations from *Kenney v. City of Pittsburgh, et al.*, No. 12-551, an excessive force case where a police officer pistol-whipped the plaintiff and then filed false reports to explain his injuries. (Ex. "A," Coleman Decl. at ¶5). In *Kenney,* the plaintiff was awarded $5,000 in compensatory damages and a total of $100,000 in punitive damages, with a fee award of $84,415.63 approved. (*Kenney*, No. 12-551 at ECF 88, 95). Again, the degree of success is greater here considering the harm, and the fee requested is a smaller proportion of the award.

Since Trooper Devlin correctly acknowledges that "the degree of success" is the most critical factor in the fee analysis (see Def. Br. at p. 5), the Court should not ignore the comparative context of this case, i.e. that counsel here was able to obtain a jury verdict several times larger than the excellent judgments in these other cases cited by Defendant, for a plaintiff whose actual damage was limited to severe emotional distress. No "downward adjustment" requested by Defendant should be made under the facts here. Full fees should be awarded at counsel's EDPA

rates.

### D. The Court Should not use its Discretion to Further Reduce Plaintiff's Attorney Fees, Especially in Light of Defendant's Failure to Challenge the Fees with Competent Record Evidence

Plaintiff's well-documented fee request reasonably amounts to a mere 37% of the judgment. Moreover, the Flitter Milz firm has already discounted its attorney fee bill by $42,500 (representing the attorney fees paid by the settling defendants), even though plaintiff had no obligation to do so.[2] The fee request is proportionate to, or more reasonable than, those cases Defendant cites and calls "comparable" to this one. Nonetheless, Defendant asks this Court to use its discretion to slice the firm's bill further by devaluing certain lawyer-performed tasks and the travel necessary to successfully prosecute this case. The Court should decline to do so.

Trooper Devlin cites *McKenna v. City of Phila.*, 582 F. 3d 447 (3d Cir. 2009) and *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) for the unremarkable proposition that lawyer rates should not be applied to clerical tasks. Under the specific circumstances of those cases, lawyer time was cut because the fee applicant was seeking to get paid lawyer rates for "performing clerical tasks such as faxing, emailing, filing, scanning, assembling, and conforming." *See McKenna,* 582 F.3d at 457. That is simply not the case here. Flitter Milz bills such clerical tasks at paralegal rates.[3] Defendant does not cite one entry where a lawyer billed for faxing, (non-substantive) emailing, filing, scanning, assembling, etc. (See Def.'s Br. at p. 11 and *passim*). Contrary to Devlin's arguments, emails with opposing counsel regarding acceptance of service is

---

[2]      *See, e.g.*, *Trunzo v. Citi Mortg.*, No. 11-1124, 2018 WL 741422, at *6 (W.D. Pa. Feb. 7, 2018) (no right to set-off where the claims against the settling and non-settling defendants are "for independent and distinct conduct"). While all claims involved the same facts surrounding the breach of peace, Trooper Devlin's conduct involved constitutional and civil rights claims and remedies different from those of Capital One and the repossession company.

[3]      Plaintiff supports her requested $195 per hour paralegal rate for the EDPA with the declarations of Mr. Searles and Mr. Wilkinson. Defendant offers no contradicting declarations or any contrary evidence to challenge that rate.

a lawyer task.  (See Def.'s Br. at p. 11).  Phone calls with the client are an ethical necessity, essential to case strategy, and are properly the province of counsel, not paralegals.  (Id.).

Defendant's citation to *Loughner* on page 13 of his brief is taken out of context, is incomplete, and is thus misleading.  In that case, the court was not necessarily addressing different rates for different types of legal work by the lawyers, but rather the billing of lawyer rates for clerical or administrative work.  The full quote from the Third Circuit is:

> A claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable. *Many of these tasks are effectively performed by administrative assistants, paralegals, or secretaries.* As such, to claim the same high reimbursement rate for the wide range of tasks performed is unreasonable.

*Loughner*, 260 F.3d at 180 (emphasis added).  Again, Trooper Devlin fails to credibly identify one clerical or administrative task for which Ms. Hyman's counsel are seeking their lawyer rates. There are none.

Devlin also takes issue with the "amount of hours" Plaintiff's counsel spent on certain activities.  (Def.'s Br. at pp. 14-16).  Defendant does not provide any specific reason why these 36 entries are excessive.  Instead, he alleges in general terms that the "time sheets demonstrate . . . duplication of hours for multiple attorneys for many items."  (Def.'s Bt. At p. 14).  This generalized objection is insufficient because the party opposing a fee petition "cannot merely allege in general terms that the time spent was excessive." *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989).  Instead, Defendant must "specify with particularity the reason for its challenge and the category (or categories) of work being challenged[.]" *Id.* at 721.  The objection "must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request." *Id.* at 720.

Further, the bulk of these objected-to entries relate to pre-complaint research and investigation (12.5 hours).  (Ex. "B," Supplemental Certification of Andrew M. Milz ¶ 2).  Such "background work cannot categorically be deemed time wasted." *Simring v. Rutgers*, 634 F. App'x 853, 861 (3d Cir. 2015).  We should expect any prudent attorney to put time and effort into building their case before filing the complaint.  The fact that some aspects of Plaintiff's investigation may not have been fruitful (such as her search for relevant State Police policies) is besides the point, because "[i]n many cases, diligent lawyers will pursue many lines of inquiry both in factual investigation and legal research that may not end up formally becoming a part of a court's record." *Id.*  It nonetheless remains reasonable for an attorney to do so.  *Id.*  Additionally, these objected-to entries reflect 12.3 hours that were prompted by Defendants' second set of Motions to Dismiss.  As Devlin is partly to blame for bringing his unmeritorious motion to dismiss, Plaintiff cannot be faulted for spending time and effort responding to Defendant's many objections.

A summary of the objected-to entries on pages 14 through 16 of Defendant's brief—and the categories they relate to—is provided below:

| CATEGORY | HOURS BILLED |
| --- | --- |
| Pre-complaint investigation | 6.2 |
| Pre-complaint legal research | 6.3 |
| Amending the Complaint in response to Defendants' First Set of Motions to Dismiss | 5.5 |
| Defendants' Second Set of Motions to Dismiss | 12.3 |
| Joint Discovery Plan | 2.6 |
| Damages | 4.9 |
| Motion to extend discovery deadline | 0.3 |
| Discovery | 1.3 |
| Offer of Judgment | 4.0 |
| Defendants' Motion for Summary Judgment | 1.9 |
| Defendant's Motions in Limine | 0.9 |
| Motion for attorney's fees | 1.3 |

(Ex. "B," Suppl. Milz Cert. ¶ 2).  All of these tasks and all of the time expended on these tasks were necessary and appropriate. (Id. ¶ 3).

Defendant also argues—without citation—that travel time must be awarded at 50% of the normal hourly rate.  Notably, Defendant provides <u>no evidence</u> that billing the normal hourly rate for travel time is excessive.  Indeed, it is eminently reasonable to compensate travel time at the standard hourly rate "[b]ecause an attorney who is traveling may not meet with other clients or perform other legal work[.]" *Arietta v. City of Allentown*, No. 04-00226, 2006 WL 2850571, at *6 (E.D. Pa. Sept. 29, 2006); *accord Steward v. Sears, Roebuck & Co.*, No. 02-8921, 2008 WL 1899995, at *6 (E.D. Pa. Apr. 29, 2008) ("Finding that an attorney loses the opportunity to meet with other clients or perform other legal work when engaged in travel necessary to the case, this court will allow reimbursement for counsels' travel time at their full hourly rate[.]"); *Rush v. Scott Specialty Gases, Inc.*, 934 F. Supp. 152, 156 (E.D. Pa. 1996) (recognizing that "the attorney loses opportunity time by traveling to trial and should be compensated for that time as much as time spent otherwise on the client").

Here, counsel represents that it is the normal and customary practice of their law firm to charge the normal rate for travel time.  (Ex. "B," Suppl. Milz Cert. ¶ 3). Counsel's travel was necessary to attend court-mandated hearings four hours away, meet with Ms. Hyman in Nanty Glo, take depositions in Harrisburg and Dallas, TX, and conduct the trial in Johnstown.  (Id.).  Further, as the above case law demonstrates, it is customary in the Eastern District of Pennsylvania to charge the normal rate for travel time, in recognition of the lost opportunity to perform other legal work.  Indeed, Plaintiff's counsel would have performed other legal work during the time spent traveling.  (Id.).  Defendant provides no principled basis to reduce counsel's normal rate for travel time, and the Court should decline to do so here.

8

### E.  Time Spent on Intertwined Claims and Defendants is Compensable

Incredibly, Trooper Devlin argues that Ms. Hyman should get paid 1/7 of her fees because she was 1/7 successful on her claims.  (Def. Br. at pp. 17–18).  This absurd argument – 180 degrees contrary to controlling Third Circuit authority in *Mancini v. Northampton Cty.*, 836 F.3d 308, 320–21 (3d Cir. 2016) and other cases –  is addressed at length in Plaintiff's opening brief (ECF 146 at pp. 3–5) and not rehashed here.  Notably, Defendant does not address *Mancini* or the other controlling authorities.

Plaintiff writes only to point out in this Reply that the discovery taken of the other parties and their employees – the depositions and associated travel to Harrisburg and Dallas, TX – were essential to the case and necessary for the successful prosecution of Trooper Devlin. Commonwealth Recovery Group's repo man, Jeff Brunner, testified at trial and was a key witness in Trooper Devlin's defense.  (N.T. 1/31/19 at pp. 100–142).  Trooper Devlin's counsel utilized photographs, and referenced sound recordings introduced into the litigation by defendant Capital One.  (N.T. 1/31/19 at pp. 64:09–65:05).  Finally, all the claims against all the defendants in this case focused on the same set of facts and the same legal concepts of "breach of the peace" and police involvement in repossessions.  (See ECF 146-3, Cert. of Andrew Milz ¶¶ 30–31).  The law is clear that Plaintiff is entitled to her fees for pressing these other claims unless they were "'distinct in all respects from' claims on which the party did succeed" at trial.  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing cases).  Far from "distinct in all respects," the Court and parties are well aware that the Section 1983 claims were inextricably intertwined with the other claims in the case.  (ECF 146-3, Milz Cert. ¶¶ 30–31).

### III.    CONCLUSION

Plaintiff was a prevailing party and obtained a remarkably successful result in this case.

Her petition for attorney fees and costs is well-supported in the record by detailed timesheets and declarations from six (6) lawyers.  Defendant advances no declarations and no supportable basis to reduce plaintiff's fee request.  In any event, Plaintiff has already voluntarily discounted her request by $42,500, nearly enough to off-set all of Defendant's suggested deductions in its opposition.[4]  The Court, in its discretion, should grant Plaintiff's request in its entirety.

Respectfully submitted:

Dated: 4/11/2019

/s/ Andrew M. Milz
Cary L. Flitter, Esquire
Andrew M. Milz, Esquire
Jody T. Lopez-Jacobs, Esquire
**FLITTER MILZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782
amilz@consumerslaw.com
*Attorney for Plaintiff*

---

[4]     In totaling all of Defendant's proposed deductions, Devlin ultimately argues for a reduction of $54,677.75 from Plaintiff's actual lodestar of $231,779.  (See plaintiff's chart at ECF 146, p. 20).  Throughout the course of its his brief in opposition, Defendant suggests a reduction of Flitter Milz's lodestar to $177,101.25 (i.e. adjusted to $194,661.25 based on WDPA rates less ½ travel time (Def. br. at p. 13) minus an additional deduction of 17,560.00 for alleged duplicative time (id. at p. 17).

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date, I have electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which sent notification of such filing to:

J. Eric Barchiesi, Esquire
Deputy Attorney General
**OFFICE OF ATTORNEY GENERAL**
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219
(412) 565-3573
jbarchiesi@attorneygeneral.gov
*Attorney for Defendant*

Date: 4/11/2019                        /s/ Andrew M. Milz
                                       ANDREW M. MILZ, ESQUIRE
                                       Attorney for Plaintiff